[No. 83677-9.   En Banc.]
Argued October 21, 2010.     Decided June 23, 2011.

THE CITY OF SEATTLE, *Respondent*, v. ROBERT J. MAY, *Petitioner*.

848

*Christine A. Jackson* (of *The Defender Association*), for petitioner.

*Peter S. Holmes, City Attorney,* and *Richard E. Greene, Assistant,* for respondent.

¶1 Owens, J. — In 2005, Robert May violated a domestic violence protection order that prohibited him from contacting his ex-wife. As a result, May was convicted, under a city of Seattle ordinance, of violating the protection order. May contends that the order he is charged with violating is invalid and that he lacked notice that violating the no-contact provision of the order was a criminal offense. The superior court reversed the municipal court convictions, and the Court of Appeals reversed the superior court, reinstating the convictions. We affirm the Court of Appeals on different grounds, concluding that May's first challenge is precluded by the collateral bar rule and that his second challenge fails in light of *State v. Bunker*, 169 Wn.2d 571, 238 P.3d 487 (2010).

## FACTS

¶2 On December 30, 1996, the King County Superior Court issued an amended order for protection to Desiree Douglass, May's ex-wife.[1] In that order, the court found that May had "committed domestic violence as defined in RCW 26.50.010." Clerk's Papers (CP) at 16. As a result, the order prohibited May from, among other things, "having any contact whatsoever, in person or through others, directly or indirectly with" Douglass. *Id.* The final paragraph of the order included the following statement:

THIS ORDER FOR PROTECTION IS PERMANENT ☑

If the duration of this order exceeds one year, the court finds that an order of less than one year will be insufficient to prevent further acts of domestic violence.

*Id.* at 17. The check mark is handwritten. The order also plainly advised May that

---

[1] This order largely paralleled an order for protection issued by a commissioner of the King County Superior Court on October 3, 1996.

[v]iolation of the provisions of this order with actual notice of its terms is [a] criminal offense under chapter 26.50 RCW and RCW 10.31.100 and <u>will subject a violator to arrest</u>.

. . . .

. . . You have the sole responsibility to avoid or refrain from violation [of] the order's provisions. Only the court can change the order upon written application.

*Id.* May signed the order, indicating receipt of a copy.

¶3 In spite of the provisions of the domestic violence protection order clearly prohibiting "any contact whatso-ever," *id.* at 16, May nonetheless contacted Douglass several times in 2005 regarding nonemergency matters.[2] As a result, May was charged in the Seattle Municipal Court with four counts of violating the domestic violence protec-tion order. This prosecution was pursuant to former Seattle Municipal Code 12A.06.180(A) (2000). May was ultimately convicted of two counts of violating a domestic violence protection order, and the court imposed a deferred two-year sentence. The superior court subsequently reversed the municipal court, finding that "[t]he protection order was facially invalid because the language in the last paragraph of the order . . . is not the finding required by RCW 26.50.060(2)." CP at 98. The Court of Appeals, in turn, reversed the superior court and reinstated May's convic-tion. *City of Seattle v. May*, 151 Wn. App. 694, 699, 213 P.3d 945 (2009). May petitioned this court for review, which we granted. *City of Seattle v. May*, 168 Wn.2d 1006, 226 P.3d 781 (2010).

## ISSUES

¶4 1. Does the collateral bar rule prohibit May from challenging the validity of the domestic violence protection order in a prosecution for violation of that order?

---

[2] The record also suggests previous uncharged violations of the no-contact provision. CP at 61.

¶5 2. Does the prosecution of May violate due process because the order failed to give May fair warning of what conduct is prohibited?

## ANALYSIS

### A. The Collateral Bar Rule Precludes May's Challenge to the Domestic Violence Protection Order[3]

¶6 The collateral bar rule prohibits a party from challenging the validity of a court order in a proceeding for violation of that order. *State v. Noah*, 103 Wn. App. 29, 46, 9 P.3d 858 (2000); *State v. Wright*, 273 Conn. 418, 426-28, 870 A.2d 1039 (2005). An exception exists for orders that are void.[4] An order is void only if there is "an absence of jurisdiction to issue the type of order, to address the subject matter, or to bind the defendant." *Mead Sch. Dist. No. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 278, 284, 534 P.2d 561 (1975). However, "[t]alismanic invocation of the phrase 'lack of jurisdiction' " is insufficient to collaterally attack the court order. *Id.* at 282. In *Mead School District*, the court acknowledged that "[t]echnically, the [issuing] court lacked jurisdiction." *Id.* at 281. The court went on, however, to find that the collateral bar rule precluded a challenge to that order. *Id.* at 284. For an order to be void, the court must lack the power to issue the *type* of order. *Id.* Provided that such power exists, any error in issuing an order may not be collaterally attacked. In sum, May can challenge the validity of the underlying domestic violence protection order only insofar as he can show that the order is absolutely void; the

---

[3] As a preliminary matter, we deny May's motion to strike that portion of the city's brief concerning the collateral bar rule. One issue raised in May's petition for review was whether "the municipal court [erred] by failing to suppress the order as inapplicable to the prosecution." Pet. for Review at 1. The city's argument directly responds to this issue. Moreover, May was granted leave to file a second supplemental brief addressing the city's argument.

[4] In the context of orders amounting to prior restraints on speech, we have also recognized an exception for orders that are "patently invalid." *State ex rel. Superior Court v. Sperry*, 79 Wn.2d 69, 74, 483 P.2d 608 (1971); *State v. Coe*, 101 Wn.2d 364, 372, 679 P.2d 353 (1984).

collateral bar rule precludes him from arguing that the order is merely erroneous.

¶7 May's order is not void. The superior court possessed jurisdiction "to issue the type of order," *id.*, that is, to issue a permanent domestic violence protection order. RCW 26.50.020(5) creates such jurisdiction. Any defects within the order simply go to whether the order was "merely erroneous, however flagrant" and cannot be collaterally attacked. *State ex rel. Ewing v. Morris*, 120 Wash. 146, 158, 207 P. 18 (1922); *see Noah*, 103 Wn. App. at 47 ("A court does not lose jurisdiction by interpreting the law erroneously."). May contends that his order is invalid because the issuing court allegedly failed to find that May was likely to resume acts of domestic violence. This assertion of factual inadequacy does not go to the court's jurisdiction to issue a permanent domestic violence protection order, and, accordingly, the collateral bar rule precludes May's challenge.

¶8 *State v. Miller*, 156 Wn.2d 23, 123 P.3d 827 (2005), is entirely consistent with the collateral bar rule. In *Miller*, the defendant in a prosecution for violation of a domestic violence no-contact order, Clay Jason Miller, contended that the validity of the underlying no-contact order was an element of the crime that the State had to prove beyond a reasonable doubt to the jury. *Id.* at 25. We held that the validity of the order, as opposed to its existence, was neither a statutory nor an implied element of the crime. *Id.* at 31. Instead, we held that "[t]he court, as part of its gate-keeping function, should determine as a threshold matter whether the order alleged to be violated is applicable and will support the crime charged." *Id.* We then expressly noted that "[w]e do not suggest that orders may be collaterally attacked after the alleged violations of the orders. Such challenges should go to the issuing court, not some other judge." *Id.* at 31 n.4.

¶9 Our discussion of the applicability of orders in *Miller* was an effort to harmonize that case with the results in *City of Seattle v. Edwards*, 87 Wn. App. 305, 941 P.2d 697 (1997), and *State v. Marking*, 100 Wn. App. 506, 997 P.2d 461

(2000), both of which were overruled in part by *Miller*. *Miller*, 156 Wn.2d at 30-31. In *Edwards*, the language in a no-contact order regarding its date of expiration was ambiguous, and the Court of Appeals construed it to mean that the order expired one year after its issuance unless the trial court extended the order. 87 Wn. App. at 309. Because Edwards's charged violation occurred more than one year after issuance of the no-contact order and no further order extending the order's duration had been issued, *id.* at 307, 309, *Miller* holds that the trial court should have excluded the order as inapplicable to the charged violation. Similarly, in *Marking*, the Court of Appeals confronted a situation in which a no-contact order lacked statutorily required notice that the no-contact provisions applied even if the contact occurred at the request of the protected party. 100 Wn. App. at 508 (citing former RCW 10.99.040(4)(d) (1997), *recodified as* RCW 10.99.040(4)(b)). The defendant was charged with violation of the no-contact order following an agreed meeting between the defendant and the protected party that led to an altercation. *Id.* at 507. At least arguably, the order failed to give the defendant notice that contact with consent of the protected party violated the order. This was an issue that should have been considered by the trial court prior to admitting the order; if the order failed to give the defendant notice that the charged conduct was prohibited, the order should have been excluded as inapplicable.

¶10 Today, we clarify that, in a proceeding for violation of a court order, the trial court's gate-keeping role includes excluding orders that are void, orders that are inapplicable to the crime charged (i.e., the order either does not apply to the defendant or does not apply to the charged conduct), and orders that cannot be constitutionally applied to the charged conduct (e.g., orders that fail to give the restrained party fair warning of the relevant prohibited conduct). Though some language in *Miller* may be capable of being read more broadly when viewed in isolation, *Miller* specifically stated that no-contact orders issued pursuant to chapter 10.99 RCW may not be "collaterally attacked after

the alleged violations of the orders." 156 Wn.2d at 31 n.4. We see no reason this should apply differently to orders issued pursuant to chapter 26.50 RCW. The collateral bar rule precludes challenges to the validity—but not the applicability—of a court order in a proceeding for violation of such an order except for challenges to the issuing court's jurisdiction to issue the type of order in question. Void orders and inapplicable orders are inadmissible in such proceedings.[5]

¶11 In the present case, the court issuing the permanent domestic violence protection order against May had jurisdiction to issue such orders, and its subject matter and personal jurisdiction are unchallenged. As such, the order was not void. The collateral bar rule therefore prohibits May's challenge to the validity of the underlying protection order.[6] If May believes the domestic violence protection order against him is invalid, RCW 26.50.130(1) permits him to seek modification of that order by the issuing court.

## B.   May's Prosecution Does Not Violate Due Process

¶12  May next contends that the protection order failed to give him fair notice of what conduct the order criminalized and, as such, was unconstitutionally vague. *Cf. State v. Watson*, 160 Wn.2d 1, 6, 154 P.3d 909 (2007) ("The due process clause of the Fourteenth Amendment to the United States Constitution requires statutes to provide fair notice of the conduct they proscribe."). The essence of May's argument is that he lacked notice that violation of the no-contact provisions of the protection order could result in criminal, rather than contempt, penalties. This is so, May argues, because the notification of criminal penalties in the

---

[5] Though an inapplicable order is not admissible in a given proceeding, it remains enforceable outside that proceeding until modified or terminated by the issuing court.

[6] Even if we were to reach the merits of May's claim, it appears clear to us that the order includes on its face a finding by the issuing court that May was likely to resume acts of domestic violence; this is implicit in the court's finding that "an order of less than one year will be insufficient to prevent further acts of domestic violence." CP at 133.

order of protection cites only chapter 26.50 RCW, which does not criminalize violation of no-contact provisions of domestic violence protection orders, only the Seattle Municipal Code does so, and the protection order issued against May does not notify him that he is subject to criminal penalties of the Seattle Municipal Code. We may assume without deciding that even where the conduct prohibited by a protection order is clear, failure to indicate that a violation will result in criminal penalties—as opposed to contempt penalties—gives rise to a vagueness challenge. Even so, May's argument lacks merit.

■ ■ ¶13 The protection order against May states, "Violation of the provisions of this order with actual notice of its terms is [a] criminal offense under chapter 26.50 RCW and RCW 10.31.100 and will subject a violator to arrest." CP at 133. May's argument is premised on the proposition that chapter 26.50 RCW does not criminalize violation of a no-contact provision of an order of protection. This premise is incorrect in light of *Bunker*. In *Bunker*, this court held that former RCW 26.50.110 (2000), which was in effect at the time May violated the order of protection, criminalized *all* violations of no-contact and protection orders.[7] 169 Wn.2d at 574, 577 n.2. The Seattle ordinance under which May was convicted, former Seattle Municipal Code 12A.06.180 (2000), is no broader, but is instead simply the type of "equivalent municipal ordinance" expressly contemplated by chapter 26.50 RCW. RCW 26.50.020(5). Thus, because May had notice that violation of the order of protection was a crime under chapter 26.50 RCW, May had "fair warning of the type of conduct" that was criminal. *State v. Wilson*, 117 Wn. App. 1, 11, 75 P.3d 573 (2003). Consequently his prosecution did not violate due process.

---

[7] Technically, the *Bunker* court interpreted former RCW 26.50.110(1) (2006). The two are substantively identical; the 2006 amendment simply added sexual assault protection orders to the list of orders covered by the statute. Laws of 2006, ch. 138, § 25.

## CONCLUSION

¶14 May made a choice to violate the plain and unambiguous terms of the domestic violence protection order that prohibited him from contacting his ex-wife. May might earnestly believe that the order is invalid, but his remedy is to seek modification of the order by the court that issued it; he is not free to violate the order with impunity. The collateral bar rule precludes May's challenge to the validity of the domestic violence protection order. In addition, because May had fair notice that violation of the no-contact provision of the domestic violence protection order would result in criminal penalties, his prosecution for such conduct does not violate due process. We affirm the Court of Appeals.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, CHAMBERS, and FAIRHURST, JJ., concur.

¶15 STEPHENS, J. (concurring in dissent) — I agree with the dissent's conclusion that the order here does not satisfy the statutory requirements for a permanent protection order under RCW 26.50.060(2). For this reason, the King County Superior Court properly held that the order could not be the basis for Robert May's criminal prosecution. I write separately because I cannot endorse the dissent's gratuitous comments about the misuse of protection orders generally. *See* dissent at 859 & n.8 and accompanying notes. There is no need in this case to question the integrity of protection orders, which undeniably serve to protect individuals in our society. As I see it, this case is about the need for law enforcement and the courts to have clearly written, unambiguous protection orders that satisfy the strict terms of RCW 26.50.060(2). Because the boilerplate "findings" in this protection order were at best vague and inadequate, the Court of Appeals must be reversed and May's conviction vacated.

¶16 SANDERS, J.[*] (dissenting) — We are asked whether a *permanent* protection order requires an unambiguous statutory finding for it to extend beyond one year. To issue a permanent protection order, RCW 26.50.060(2) requires an explicit finding that "respondent is likely to resume acts of domestic violence against the petitioner." The boilerplate "finding" at issue here is at best vague and inadequate; accordingly, I dissent.

## FACTS AND PROCEDURAL HISTORY

¶17 Though the majority's limited recitation of the facts is accurate, several key details have been omitted. Robert May and Desiree L. Douglass dissolved their marriage in 1995 in a "high-conflict" divorce proceeding. Douglass requested an order of protection against May in September 1996 in King County Superior Court; this request was denied by Judge Johnson because of *insufficient factual basis*. Again on October 3, 1996, Douglass appeared before the King County Superior Court; Commissioner Shlesser issued a default domestic violence protection order against May pursuant to chapter 26.50 RCW.[8] May was *not* present

---

[*] Justice Richard Sanders is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

[8] I note the growing trend to use protection orders as tactical weapons in divorce cases. "Restraining orders . . . are granted to virtually all who apply . . . . In many [divorce] cases, allegations of abuse are now used for tactical advantage." Elaine Epstein, *Speaking the Unspeakable*, MASS. BAR ASS'N NEWSL., June-July 1993, at 1. "Many divorce lawyers routinely recommend pursuit of civil protection orders for clients in divorce proceedings, either because they assume abused women are not candid about being abused or as a tactical leverage device." Jeannie Suk, *Criminal Law Comes Home*, 116 YALE L.J. 2, 62 n.257 (2006) (citing Randy Frances Kandel, *Squabbling in the Shadows: What the Law Can Learn from the Way Divorcing Couples Use Protective Orders as Bargaining Chips in Domestic Spats and Child Custody Mediation*, 48 S.C. L. REV. 441, 448 (1997) (describing protection orders as "an affirmative element of divorce strategy")); *see also* Lynette Berg Robe & Melvyn Jay Ross, *Extending the Impact of Domestic Violence Protective Orders*, 27 FAM. L. NEWS, No. 4, 2005, at 26-27 ("[P]rotective orders are increasingly being used in family law cases to help one side jockey for an advantage . . . . While clearly these protective orders are necessary in egregious cases of abuse, it is troubling that they appear to be sought more and more frequently for retaliation and litigation purposes rather than from the true need to be protected from a genuine abusive batterer."), *available at* http://www.cafcusa.org/docs/family-law-news_TRO_RO_Pages%2026thru30_Vol27-Number4_2005-1.pdf 21, 2011); Scott A.

at this default hearing. An amended order was issued on December 30, 1996; May was present at this hearing.

¶18 The order prohibited May from physically harming Douglass or their son, from coming near or contacting Douglass "except by telephone regarding child for emergency purposes only,"[9] from entering Douglass' residence or workplace, and from interfering with Douglass' "physical or legal custody" of their son. Clerk's Papers (CP) at 132. The order also stated that any violation of the order was a "criminal offense under chapter 26.50 RCW and 10.31.100," subjecting the "violator to arrest." *Id.* at 133. Finally, it stated the order for protection was "[p]ermanent" and contained boilerplate language, stating, "If the duration of this order exceeds one year," it was the court's finding "that an order of less than one year will be insufficient to prevent further acts of domestic violence." *Id.*

¶19 Nine years later, on March 11, 2005, May left a message on Douglass' voice mail inquiring about contact with their son. Thirteen days after that, May sent an e-mail to Douglass seeking visitation. As a result May was charged in Seattle Municipal Court with two counts of violating the protection order. May challenged the admissibility of the predicate protection order, arguing the permanent order was facially invalid because it did not contain a finding May was likely to resume acts of domestic violence after a one

---

Lerner, *Sword or Shield? Combating Orders-of-Protection Abuse in Divorce*, ILL. STATE BAR J., Nov. 2007 ("[N]ot all parties to divorce are above using [protection orders] not for their intended purpose but solely to gain advantage in a dissolution."), *available at* www.cpr-mn.org/. . ./OFP%20Sword%20or%20Shield%20 Illinois%20Bar.doc.

[9] The orders can prohibit any communication, directly or indirectly, and require that any limited communication go through the victim's attorney. *See* Sally F. Goldfarb, *Reconceiving Civil Protection Orders for Domestic Violence: Can Law Help End the Abuse Without Ending the Relationship?*, 29 CARDOZA L. REV. 1487, 1504, 1507 (2008). The implications of a total ban on communication mean a domestic violence defendant cannot even contact the "victim" to arrange child visitation.

year period, as required by RCW 26.50.060(2) for a permanent order.[10]

¶20 The municipal court rejected May's argument, concluding the issuing court could have found likelihood of future domestic violence absent the order, based on the *allegations and various petitions by Douglass*. Over objection, the protection order was admitted into evidence; May was found guilty on stipulated facts.

¶21 On appeal, the King County Superior Court reversed, reasoning the order was facially defective because it lacked the factual finding required by statute. Division One of the Court of Appeals accepted discretionary review and reversed. *City of Seattle v. May*, 151 Wn. App. 694, 695, 699, 213 P.3d 945 (2009). Misfortune seemed his lot, but May again sought review of this decision, arguing the trial court erred by admitting an inapplicable order. We granted review. 168 Wn.2d 1006, 226 P.3d 781 (2010).

## ANALYSIS

¶22 May argues the trial court should not have admitted the permanent domestic violence protection order into evidence because it did not comply with the underlying statute, namely it lacked the required statutory finding necessary to extend it beyond one year. Whether a protec-

---

[10] RCW 26.50.060(2) states:

If a protection order restrains the respondent from contacting the respondent's minor children the restraint shall be for a fixed period not to exceed one year. This limitation is not applicable to orders for protection issued under chapter 26.09, 26.10, or 26.26 RCW. With regard to other relief, if the petitioner has petitioned for relief on his or her own behalf or on behalf of the petitioner's family or household members or minor children, *and the court finds that the respondent is likely to resume acts of domestic violence* against the petitioner or the petitioner's family or household members or minor children when the order expires, the court may either grant relief for a fixed period or enter a permanent order of protection.

If the petitioner has petitioned for relief on behalf of the respondent's minor children, the court *shall* advise the petitioner that if the petitioner wants to continue protection for a period beyond one year the petitioner may either petition for renewal pursuant to the provisions of this chapter or may seek relief pursuant to the provisions of chapter 26.09 or 26.26 RCW.

(Emphasis added.)

tion order satisfies statutory requirements is a question of law. We review questions of law de novo. *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 100 P.3d 791 (2004).

*Challenge to the Facial Validity of an Order Is Not a Collateral Attack*

¶23 The collateral bar rule generally states judicial orders may not be collaterally attacked in a subsequent proceeding to enforce that order. *State v. Noah*, 103 Wn. App. 29, 46, 9 P.3d 858 (2000); *State v. Miller*, 156 Wn.2d 23, 31 n.4, 123 P.3d 827 (2005). A collateral attack challenges "the sufficiency of the evidence supporting the protection order." *State v. Joy*, 128 Wn. App. 160, 161, 114 P.3d 1228 (2005). Essentially, the collateral bar rule precludes a challenge to the underlying factual basis of an order that a respondent is charged with violating. It does not bar a challenge to the facial validity of an order: a "defendant may question the order which he is charged with refusing to obey only in so far as he can show it to be absolutely void." *State ex rel. Ewing v. Morris*, 120 Wash. 146, 158, 207 P. 18 (1922); *Joy*, 128 Wn. App. at 164 (recognizing a right to challenge the facial validity of a protection order). "A judgment is void only where the court lacks jurisdiction of the parties or the subject matter or lacks the inherent power to enter the particular order involved." *Bresolin v. Morris*, 86 Wn.2d 241, 245, 543 P.2d 325 (1975).

¶24 Domestic violence protection orders are creatures of statute. The courts have no inherent authority to issue such orders; they have no power to issue protection orders that do not *strictly* comply with the governing statute. Here, May raises a question of statutory authority to issue a permanent domestic violence protection order lacking a statutorily required finding. As correctly recognized by the Court of Appeals, May's challenge to the applicability of the order is not a collateral attack. *May*, 151 Wn. App. at 698 n.9. May has a right to challenge the facial validity of the permanent protection order in an enforcement action. *See Miller*, 156 Wn.2d at 31 (issues relating to whether the order complied

with the underlying statute are part of the court's gate-keeping function). However a challenge to the sufficiency of the evidence supporting the order may be brought only on direct appeal. *Id.* at 32; *Joy*, 128 Wn. App. at 164.

*Threshold Finding of Validity Required by* Miller

¶25 In *Miller* this court held the validity of a no-contact order was not an implied element of a violation of a no-contact order. *Miller*, 156 Wn.2d at 24. "[T]he 'validity' of the no-contact order is a question of law appropriately within the province of the trial court to decide as part of the court's gate-keeping function." *Id.* "The court, as part of its gate-keeping function, should determine as a threshold matter whether the order alleged to be violated is applicable and will support the crime charged." *Id.* at 31. Issues relating to "applicability" of the order to the crime charged include whether the court granting the order was authorized to do so, whether the order was adequate on its face, and *whether the order complied with the underlying statute. Id.* Inapplicable orders should not be admitted into evidence. *Id.* "If no order is admissible, the charge should be dismissed." *Id.*

¶26 RCW 26.50.060(1) authorizes a trial court to issue a protection order after notice and hearing. *Spence v. Kaminski*, 103 Wn. App. 325, 331, 12 P.3d 1030 (2000); *City of Seattle v. Edwards*, 87 Wn. App. 305, 310, 941 P.2d 697 (1997), *overruled on other grounds by Miller*, 156 Wn.2d 23. The court issuing the protection order is required to make *all* findings mandated by the underlying statute. CR 52(a)(2)(C); *Wold v. Wold*, 7 Wn. App. 872, 503 P.2d 118 (1972). A permanent protection order requires the issuing court to find "the respondent is likely to resume acts of domestic violence against the petitioner" after expiration of the order. RCW 26.50.060(2); *Spence*, 103 Wn. App. at 331. May asserts a valid permanent protection order must expressly include this finding on its face.

¶27 A permanent protection order "does not require any particular wording." *Edwards*, 87 Wn. App. at 310; *see* RCW

26.50.060. The governing statute, however, does require that a particular finding be made before the issuance of a permanent order, namely that "the respondent is likely to resume acts of domestic violence against the petitioner" when the order expires.[11] RCW 26.50.060(2). The City properly concedes, "The findings themselves must of course be made . . . ." Br. of Appellant at 3-4. As a condition of applicability, it is the State's burden to prove the existence of a clear and explicit finding that satisfies the statutory prerequisites.

¶28 Here the only evidence of such finding was the "boilerplate" language on the face of the order. Consequently, the boilerplate language, the only indication of a finding, must satisfy the statutory mandate.

*Permanent Order Lacked a Finding of Likelihood of Future Domestic Violence*

¶29 The order states,

THE ORDER FOR PROTECTION IS PERMANENT ☑

If the duration of this order exceeds one year, the court finds that an order of less than one year will be insufficient to prevent further acts of domestic violence.

CP at 133. This language merely states an order of *less than one year* is insufficient to prevent further acts of violence; it does not, however, address whether domestic violence is likely to resume after one year. This abbreviated "finding" does no more than state why the order is being issued in the first place: to prevent future acts of domestic violence for a period of one year. It does not establish the need for an order that exceeds one year. Moreover, this "finding" is conditional; it is not an affirmative statement the court has entered a finding. Rather, the "finding" is effective only if the duration of the order exceeds one year; the court did not actually find upon expiration of the order acts of domestic

---

[11] RCW 26.50.060(2) does not allow issuance of permanent protection orders restraining a respondent from contacting his or her minor children. These orders shall not exceed one year. RCW 26.50.060(2).

violence were likely to resume. At best, this language glosses over the threshold requirement and treats it like a formality. At worst, this boilerplate language appears to be an anticipatory attempt to justify every order that exceeds one year.

¶30 The Court of Appeals, relying on *Spence*, held this "boilerplate" language, though not a positive statement that domestic violence would likely resume after one year, was sufficient to show the trial court had made the required finding. *May*, 151 Wn. App. at 695. That reliance is misplaced. *Spence* was a direct appeal challenging an order issued pursuant to chapter 26.50 RCW. Spence challenged the order on several constitutional grounds, but the primary question before the court was whether due process requires the court to find a recent act of domestic violence before issuing a protection order. *Spence*, 103 Wn. App. at 328. The section relied on by the Court of Appeals holds the language on the preprinted form in *Spence*—which is nearly identical to the boilerplate language used in this case—sufficiently stated findings to support the issuance of the order. But *Spence* is distinguishable because the order in that case contained additional handwritten findings that supported the issuance of a permanent order.[12] *Id.* at 329. *Spence* does not control here because that trial court complied with the statutory mandate; the court made the requisite finding and the evidence in the record supported that finding.

¶31 But the order here is ambiguous and so does not satisfy statutory requirements: the boilerplate language is not an adequate finding that a permanent order was necessary to prevent May from engaging in future acts of domestic violence.

---

[12] The handwritten findings, which track the "infliction of imminent harm" language in the definition of domestic violence, state that "the long history of allegations back to ... 1992 have been investigated by law enforcement[,] ICPS or others. All this court can determine is that Mr. Kaminski has threatened Ms. Spence in the past and she is afraid of him." *Spence*, 103 Wn. App. at 329 (alterations in original); *see* RCW 26.50.010.

¶32 The jurisdiction of courts in cases involving domestic violence protection orders is derived from the statute, chapter 26.50 RCW. RCW 26.50.020(5); *Puget Sound Navigation Co. v. Dep't of Pub. Works*, 152 Wash. 417, 423-26, 278 P. 189 (1929). In *Pearce*, this court held an order void, as being in excess of a court's jurisdiction, when a trial court exceeds its statutory authority. *Pearce v. Pearce*, 37 Wn.2d 918, 922-23, 226 P.2d 895 (1951); *Davidson v. Ream*, 97 Misc. 89, 113-14, 161 N.Y.S. 73 (Sup. Ct. 1916) (" 'In its most general sense, the term "jurisdiction" when applied to a court, is the power residing in such court to determine judicially a given action, controversy, or question presented to it for decision. If this power does not exist with reference to any particular case, its determination by the court is an absolute nullity . . . .' " (quoting 1 JOHN NORTON POMEROY, A TREATISE ON EQUITY JURISPRUDENCE § 129, at 153-54 (4th ed. 1918))), *aff'd*, 178 A.D. 362, 164 N.Y.S. 1037 (1917). Because a permanent protection order cannot issue without this required finding, the issuing court exceeded its statutory authority when it issued this permanent protection order.[13] "The failure to make such a finding is fatal to the validity of the order." *State ex rel. Puget Sound Navigation Co. v. Dep't of Pub. Works*, 164 Wash. 237, 242, 2 P.2d 686 (1931). Thus, the protection order issued against May was void, and it was error for the trial court to admit it. Absent a valid domestic violence protection order, leaving a voice mail and sending an e-mail are not criminal; consequently, no violation of law occurred.[14]

---

[13] The majority's analysis completely disregards a court's limited authority when its authority is derived *solely* from statute. The majority would allow the judicial branch to usurp power explicitly limited by the legislature. Since the legislature granted authority to issue *permanent* protection orders only with a finding of likelihood of future violence, courts have jurisdiction to enter permanent orders only when such finding is present.

[14] I recognize domestic violence as a serious crime against society and in no way do I excuse or support violent behavior. However, the rule of law applies even to alleged domestic violence perpetrators. Only by following the law can we continue to "assure the victim[s] of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide." RCW 10.99.010.

## CONCLUSION

¶33 A clear and explicit statutory finding that "respondent is likely to resume acts of domestic violence against petitioner" is required for a valid permanent protection order. RCW 26.50.060(2). Only applicable protection orders supporting conviction of the crime charged are admissible. This order was inapplicable to the crime charged, and it was therefore error for the trial court to admit it into evidence or base a criminal conviction on its violation. The Court of Appeals must be reversed and May's conviction vacated.

¶34 I dissent.

J.M. JOHNSON, J., concurs with SANDERS, J. PRO TEM.