IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2016 MAR 28 AM 9: 40

COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 72564-5-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| AL-PENYO KNIAR-JAMES BROOKS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 28, 2016 |
| | ) | |

BECKER, J. — Appellant Al-Penyo Brooks was convicted of crimes arising from an assault on his girlfriend. Brooks repeatedly ordered her not to appear at his trial, and she did not. The trial court admitted statements she made to police on the day of Brooks' arrest. We conclude the evidence was sufficient to show by the clear, cogent, and convincing standard that Brooks caused his girlfriend to be unavailable as a witness. The trial court did not err in determining that Brooks forfeited his right to confront her.

FACTS

On January 20, 2014, two police officers responded to a 911 call from an apartment in Federal Way, Washington. Brooks was banging on the front door of the apartment and yelling. Inside the apartment, one of the officers found Brooks' girlfriend, 17-year-old AW. She had a swollen lip. AW told the officer

Brooks had punched her in the mouth. She initially agreed to let the officer photograph her injuries, then changed her mind. She told the officer this was because she wanted to protect Brooks. AW refused to give a written statement unless the police released Brooks. Brooks was arrested and taken into custody.

The next day, Brooks was charged and arraigned in Federal Way Municipal Court on one count of fourth degree assault-domestic violence. The court issued a pretrial domestic violence no-contact order prohibiting Brooks from contacting AW, including "by phone, mail, or electronic means."

Despite the no-contact order, Brooks began calling and e-mailing AW from jail—at least 65 calls and 319 e-mails while the no-contact order was in place. When this was discovered, Federal Way dismissed the case in municipal court, and King County charged Brooks in superior court with the felony of witness tampering, along with five counts of domestic violence misdemeanor violation of a court order and one count of fourth degree assault-domestic violence.

The trial began in August 2014. AW did not show up despite being subpoenaed. The trial court found that Brooks forfeited his right to confrontation by wrongdoing. The responding officer who interviewed AW was therefore permitted to testify that AW told him that Brooks punched her in the mouth. The jury found Brooks guilty on all counts. Brooks appeals.

FORFEITURE BY WRONGDOING

Brooks believed that if AW did not testify against him, he would not be convicted of assaulting her. In a number of his phone calls and e-mails to AW from jail, Brooks instructed her not to show up to court. In an e-mail on February

2

17, 2014, AW told him she had to go to court for his case or she was going to be served with a warrant for failure to appear. The next day, Brooks called AW and ordered her not to show up in court. She responded that she would "have a warrant" if she did not show up. Brooks said, "Baby, take the fucking warrant. Trust me, I know what I'm talking about." He told her he was facing years behind bars if she testified against him and that she would not have to do any time for failing to appear. "They're doing that to scare you so they can charge me." More than 10 times in the same phone call, Brooks insisted that AW not go to court. The following excerpts are representative:

> BROOKS: . . . I'm trying to tell you, babe, do not show. If you love me, you will really want me out. I'm telling you, do not show up to court. I repeat, do not show up to court. Take the failure to appear. . . .
> . . . .
> Please, babe, I'm begging you, do not go. . . .
> . . . .
> If you don't show up to court, I'm gonna be out by March 12. . . . All right?
> AW: Okay.
> BROOKS: All right.
> AW: I love you.
> BROOKS: I love you, too.

Again on February 26, Brooks told AW he would be out March 12, but "that's if you don't show up to court."

Before trial, the State represented to the trial court that it had been in contact with AW initially but had lost contact with her after Brooks "began tampering." The State argued that AW's statements to the responding officer were admissible based on the evidence of Brooks ordering her not to come to court, including the February 18 phone call discussed above. The trial court

granted the State's motion. At trial the responding officer testified that AW told him Brooks punched her in the mouth and caused injuries to her lip. Brooks contends admission of the officer's testimony about what AW said violated his right to confrontation.

The Sixth Amendment gives criminal defendants the right to confront the witnesses against them. A defendant forfeits this right when he or she causes the witness to be unavailable. State v. Dobbs, 180 Wn.2d 1, 11, 320 P.3d 705 (2014). We recently affirmed a trial court's application of the doctrine of forfeiture by wrongdoing in State v. Hernandez, No. 72411-8-I, 2016 WL 661837 (Wash. Ct. App. Feb. 16, 2016) (defendant charged with child molestation made phone calls from jail conspiring with his girlfriend to take the child to Mexico where she would be unavailable to testify). The trial court must decide whether clear, cogent, and convincing evidence shows that the wrongdoing of the defendant caused the witness to become unavailable. Dobbs, 180 Wn.2d at 11.[1]

When the standard of proof is clear, cogent, and convincing evidence, the fact at issue must be shown to be highly probable. State v. Fallentine, 149 Wn. App. 614, 620, 215 P.3d 945, review denied, 166 Wn.2d 1028 (2009). The standard of review is whether there is substantial evidence to support the findings in light of the highly probable test. Fallentine, 149 Wn. App. at 620. It is for the trial court, not the reviewing court, to actually weigh the evidence and determine whether it is clear, cogent, and convincing. Fallentine, 149 Wn. App.

---

[1] Clear, cogent, and convincing evidence must also show that the defendant engaged in the wrongful conduct with the intention to prevent the witness from testifying. Dobbs, 180 Wn.2d at 11. That part of the test is not at issue here.

at 620. Accordingly, we will not disturb findings supported by evidence which the court could reasonably have found to be clear, cogent, and convincing. Fallentine, 149 Wn. App. at 620-21.

Brooks argues that given AW's initial reluctance to cooperate with the police, it is not highly probable that the communications from Brooks caused her to stay away from the trial. He argues it is far more probable that she independently chose not to appear because she did not want to support the prosecution in any way.

The fact that AW declined to give a written statement or allow the officer to photograph her injuries on the day Brooks was arrested does not prove that Brooks played no causal role in her decision to disobey the trial subpoena eight months later. Despite any initial hesitation, AW's own statements show that after the State brought charges against Brooks, she planned to obey the subpoena. She feared that a warrant would be issued for her arrest and that charges would be filed against her if she did not.

It is a reasonable inference that it was Brooks who persuaded her not to appear. Brooks cursed at AW. He told her his jail sentence would be her fault if she showed up for court. He e-mailed her that it was her duty to obey him as stated in the Bible. He told her he would never forgive her, he complained that she was aggravating his heart condition, and over and over, he pressured her not to appear.

"Forfeiture by wrongdoing requires clear, cogent, and convincing evidence. It does not require a showing beyond a reasonable doubt. A court

does not need to rule out all possibilities for a witness's absence; it needs to find only that it is highly probable that the defendant intentionally caused it." Dobbs, 180 Wn.2d at 16. Here, the trial court could reasonably have found it highly probable that Brooks caused AW's unavailability.

## PROSECUTORIAL MISCONDUCT

Brooks contends the prosecutor committed misconduct in closing argument by introducing facts not in evidence and appealing to the jury's passion and prejudice. In a prosecutor's closing argument, mere appeals to jury passion and prejudice, as well as prejudicial allusions to matters outside the evidence, are inappropriate. State v. Belgarde, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). But failure to object to alleged prosecutorial misconduct at trial waives any error unless the misconduct is so flagrant and ill-intentioned that no instruction could have cured the prejudice. Belgarde, 110 Wn.2d at 507. Brooks did not object at trial to the statements he challenges on appeal.

The prosecutor concluded her closing argument:

> [AW] is 17. She should be having her first week of high school, or first week of her senior year in high school, having fun with her friends, shopping for school clothes, getting excited for the year to come.
>
> She's not. She's fielding angry, abusive phone calls from him, over and over and over. "Buy me money, put money on my books, you better call me more, send me more pictures, send me more letters, talk to this person, do that, do this, do that."
>
> But she's running around, trying to go to her doctor's visits for this baby. She's not enjoying life, like she should be. But we're going to punish her because she falls prey to his manipulations? And he is able to control her?
>
> She's young. She's scared. That's not okay. And that's why this is important. So we've shown you that the State has proved every one of these charges beyond a reasonable doubt.

Brooks contends the prosecutor was arguing facts not in evidence. We disagree. The State introduced into evidence recordings of 17 phone calls from Brooks to AW, phone records showing calls from Brooks to AW, and e-mails from AW discussing her doctor's appointments and her pregnancy. The State also introduced e-mails and phone calls sent from Brooks making the exact demands for money, phone calls, pictures, letters, and for AW to contact others that the prosecutor argued.

The prosecutor's arguments about what AW "should" be doing— starting a new school year, having fun with friends, shopping for clothes, getting excited, enjoying life—arguably went beyond the evidence. Nevertheless, they do not rise of the level of being so flagrant and ill-intentioned that no instruction could have cured the prejudice.

Also in her closing argument, the prosecutor referred to Brooks as "the father of her unborn child" and to AW as the "17-year-old pregnant mother of his unborn child." Brooks contends these references were irrelevant and unduly prejudicial. We disagree. Knowing his girlfriend was pregnant, Brooks repeatedly warned AW that if she helped to convict him, he would be locked up for years—clearly implying that if she showed up for court, she would be left alone and her baby would be fatherless. The prosecutor said Brooks did not want AW to "have to tell you what happened to her, that she was punched in the face by somebody that says he loves her, the father of her unborn child." This was not misconduct. It was a fair inference that Brooks feared the negative

impact that hearing his pregnant girlfriend testify about the assault would have on the jury.

The jury was instructed that lawyers' statements are not evidence. Jurors are presumed to have followed this instruction. See State v. Warren, 165 Wn.2d 17, 29, 195 P.3d 940 (2008), cert. denied, 556 U.S. 1192 (2009). Brooks' claim of prosecutorial misconduct fails.

VALIDITY OF NO-CONTACT ORDER

When Brooks was arraigned in Federal Way Municipal Court on January 21, 2013, the court issued a pretrial domestic violence no-contact order prohibiting Brooks from contacting AW. The expiration date listed on the no-contact order was January 21, 2063, 50 years from the date of issue. This no-contact order was recalled on March 12, 2014, when the municipal court granted the city's motion to dismiss without prejudice. The no-contact order was admitted over Brooks' objection that it was invalid. He assigns error to this ruling.

The collateral bar rule prohibits a party from challenging the validity of a court order in a proceeding for violation of that order. City of Seattle v. May, 171 Wn.2d 847, 852, 256 P.3d 1161 (2011). Exceptions exist for orders that are void or inapplicable. May, 171 Wn.2d at 852, 854-55. Brooks does not allege that the no-contact order was void or inapplicable. He argues only that it was *invalid*, both because there was no showing that the 50-year duration of the order was reasonably necessary and because the trial court lacked the statutory authority to issue an order of that duration. May leaves no doubt that no-contact orders issued pursuant to chapter 10.99 RCW, as Brooks' was, may not be collaterally

8

attacked.  See also Muma v. Muma, 115 Wn. App. 1, 7, 60 P.3d 592 (2002) (50-year no-contact order not "invalid" merely because it purports to extend beyond the one-year period allowed by applicable statute).

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Brooks has filed a statement of additional grounds for review as permitted by RAP 10.10.  He first contends, citing ER 404(b), that a copy of his social media page should not have been admitted into evidence.  The page was admitted to establish his identity, not as proof of a prior act.

Brooks contends he lacked notice of the officers who testified for the State.  But all five officers who testified were on the witness list submitted by the State on July 24, 2014.

The trial court removed Brooks from the courtroom several times during the trial.  Brooks contends the court violated his right to be present at all proceedings.  But the court may exclude the defendant for good cause shown.  CrR 3.4(a).  The record demonstrates that each time Brooks was removed, it was because he was so disruptive that trial proceedings could not continue, and each time it was after being warned by the court.  Brooks was allowed to watch proceedings from another courtroom via video monitor and consult with his attorney as necessary.  After each removal, the court allowed Brooks to return to the courtroom once he gave assurances that he would control his behavior.  The record does not establish a violation of the right to be present at trial.

Brooks claims he was deprived of a right to interview AW for impeachment purposes. Because AW did not testify at trial, he has not stated a ground for review.

Brooks contends the State failed to produce statements from witnesses in violation of Federal Rule of Criminal Procedure 26.2(e). The federal rule is inapplicable in our state courts.

In short, Brooks does not identify viable additional grounds for appeal. Affirmed.

Becker, J.

WE CONCUR:

Dwyer, J.

Cox, J.