IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78963-5-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| REGINALD FREEBERG-BASKETT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: October 14, 2019 |

SMITH, J. — In December 2016, Reginald Freeberg-Baskett was convicted in superior court of domestic violence assault. He received a one-year suspended sentence, a condition of which required him not to have contact with the victim, Gisele Blanchet, for two years. The superior court entered a no-contact order to record the no-contact condition.

The State later charged Freeberg-Baskett with violation of the no-contact order, alleging that Freeberg-Baskett had prohibited contact with Blanchet on two occasions in May 2018, i.e., after the term of Freeberg-Baskett's suspended sentence but before the expiration of the no-contact order. On Freeberg-Baskett's motion, the trial court excluded evidence of the no-contact order, effectively terminating the State's case. The court relied on State v. Granath, 190 Wn.2d 548, 415 P.3d 1179 (2018), in which our Supreme Court concluded that a district court does not have authority under RCW 10.99.050 to issue a

domestic violence no-contact order that lasts longer than the defendant's suspended sentence.

Because the no-contact order was expressly applicable to Freeberg-Baskett and to the crimes with which he was charged, the trial court erred by excluding evidence of the no-contact order. Therefore, we reverse and remand for further proceedings.

## FACTS

In 2016, Freeberg-Baskett was convicted in King County Superior Court of assault in the fourth degree—domestic violence (count 1) and attempted theft in the third degree (count 2). On December 9, 2016, Freeberg-Baskett was sentenced to 364 days' imprisonment on count 1 and 90 days' imprisonment on count 2, to run concurrently. The court suspended the sentenced imprisonment on certain conditions. One of those conditions was that Freeberg-Baskett be on unsupervised probation for 12 months, i.e., through December 8, 2017. Another was that Freeberg-Baskett have no contact with the victim, Blanchet, pursuant to chapter 10.99 RCW. To that end, the court entered a domestic violence no-contact order with a stated expiration date of December 9, 2018. In other words, the term of the no-contact order was one year longer than the term of Freeberg-Baskett's suspended sentence.

In April 2017, Freeberg-Baskett was ordered to serve out his remaining sentence in custody after he failed to comply with another condition of his suspended sentence.

About a year later, according to probable cause statements, officers found Freeberg-Baskett and Blanchet together on two occasions in May 2018, i.e., after Freeberg-Baskett's suspended sentence would have expired but before the stated expiration of the no-contact order. The State subsequently charged Freeberg-Baskett with two counts of domestic violence felony violation of a court order. Freeberg-Baskett moved to dismiss the charges, arguing that under Granath, the no-contact order was void and inapplicable to the charged crimes, which occurred after the term of Freeberg-Baskett's suspended sentence. The State countered that under the collateral bar rule, Freeberg-Baskett was barred from challenging the validity of the no-contact order in a proceeding for violation of that order.

The trial court concluded that the no-contact order was not void and denied Freeberg-Baskett's motion to dismiss. But it excluded evidence of the no-contact order, reasoning that under Granath, the order was "'not enforceable'" and was therefore inapplicable to the crimes charged (quoting Granath, 190 Wn.2d at 557). The trial court later found, under RAP 2.2(b)(2), that "the practical effect of the Court's Order on Motion to Dismiss signed 8/31/18 is to terminate the case." The State appeals.

ANALYSIS

The State argues that the trial court erred by excluding evidence of the no-contact order. We agree.

3

We review rulings on the admissibility of evidence for abuse of discretion. State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997). The trial court abuses its discretion when it applies an incorrect legal analysis or commits another error of law. State v. Tobin, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007).

The trial court serves a gate-keeping role in a proceeding for violation of a court order. State v. Miller, 156 Wn.2d 23, 24, 123 P.3d 827 (2005); City of Seattle v. May, 171 Wn.2d 847, 854, 256 P.3d 1161 (2011). "[T]he trial court's gate-keeping role includes excluding orders that are void, orders that are inapplicable to the crime charged . . . and orders that cannot be constitutionally applied to the charged conduct (e.g., orders that fail to give the restrained party fair warning of the relevant prohibited conduct)." May, 171 Wn.2d at 854. Here, and as further discussed below, the trial court committed an error of law by excluding the no-contact order as inapplicable to the crimes with which Freeberg-Baskett was charged. Also, as discussed below, we are not persuaded by any of Freeberg-Baskett's proffered alternative justifications for the trial court's exclusion of the no-contact order. Therefore, reversal is required.

An order is inapplicable to the crime charged if "the order either does not apply to the defendant or does not apply to the charged conduct." May, 171 Wn.2d at 854. Here, the order was applicable to both Freeberg-Baskett and the conduct with which he was charged in that it expressly directed Freeberg-Baskett not to "knowingly enter, remain, or come within 500 . . . feet . . . of [Blanchet] or

4

[her] residence, school, workplace, [or] vehicle" until December 9, 2018.[1] Therefore, the trial court erred by excluding it as inapplicable.

Freeberg-Baskett disagrees and offers a number of justifications for the trial court's exclusion of the no-contact order. None of them are persuasive.

Freeberg-Baskett first relies on Miller to argue that an order is inapplicable not just when it does not apply to the defendant or the charged conduct, but also when it "is not issued by a competent court, is not statutorily sufficient, is vague or inadequate on its face, or otherwise will not support a conviction of violating the order." Miller, 156 Wn.2d at 31. He then relies on Granath to argue that the no-contact order was inapplicable within the meaning of Miller. But his reliance on Miller and Granath is misplaced.

In Miller, our Supreme Court held that the validity of a no-contact order is neither an express nor implied element of the crime of violating a no-contact order. Miller, 156 Wn.2d at 29. After reaching its holding, the court acknowledged that there were several Court of Appeals cases "which deemed validity an 'implied element.'" Miller, 156 Wn.2d at 29. Thus, "out of respect for the opinions of the Court of Appeals[,]" Miller, 156 Wn.2d at 29, the court engaged in a closer examination of two of those cases: City of Seattle v. Edwards, 87 Wn. App. 305, 941 P.2d 697 (1997), and State v. Marking, 100 Wn. App. 506, 997 P.2d 461 (2000). Although the Miller court overruled Edwards and

---

[1] The no-contact order contains an exception for third-party contact for arranging child visitation, but that exception is not at issue here.

Marking to the extent that they held that the validity of a no-contact order was an element of the crime of violating the no-contact order, it stated that it was "inclined to believe that the Court of Appeals reached appropriate results in Marking and Edwards." Miller, 156 Wn.2d at 31. It then characterized the issues with the no-contact orders in those cases as relating to the "'applicability'" of the order to the crime charged and, as Freeberg-Baskett correctly points out, stated that "[a]n order is not applicable to the charged crime if it is not issued by a competent court, is not statutorily sufficient, is vague or inadequate on its face, or otherwise will not support a conviction of violating the order." Miller, 156 Wn.2d at 31.

But six years later, in May, our Supreme Court clarified the meaning of "applicability." May involved application of the collateral bar rule, which generally "prohibits a party from challenging the validity of a court order in a proceeding for violation of that order." May, 171 Wn.2d at 852. The issue before our Supreme Court in May was whether the collateral bar rule prohibits a defendant from challenging the validity of a domestic violence protection order in a prosecution for violation of that order. May, 171 Wn.2d at 851. The court ultimately held that the rule *did* bar such a challenge with regard to the no-contact order at issue in May, which failed to expressly recite a statutorily required finding that the defendant was likely to resume acts of domestic violence. May, 171 Wn.2d at 855 & n.6.

The court then observed that although the collateral bar rule generally precludes challenges to the *validity* of an order in a proceeding for violation of that order, the rule does not bar challenges to the *applicability* of an order. May, 171 Wn.2d at 855. The May court explained, however, that Miller's "discussion of the applicability of orders . . . was an effort to harmonize that case with the results in . . . Edwards . . . and Marking." May, 171 Wn.2d at 853-54. And, although it acknowledged that "some language in Miller may be capable of being read more broadly when viewed in isolation," the May court clarified that an order is inapplicable when it "either does not apply to the defendant or does not apply to the charged conduct." May, 171 Wn.2d at 854. In short, after May, an order is inapplicable only when it does not apply to the defendant or to the charged conduct. Therefore, Freeberg-Baskett's reliance on Miller to suggest that applicability refers to something broader is misplaced.

Freeberg-Baskett's reliance on Granath is also misplaced. In Granath, the defendant, Wendy Granath, was convicted in King County District Court of two domestic violence offenses. Granath, 190 Wn.2d at 550. The district court sentenced Granath to 364 days in jail with 334 days suspended for 24 months. Granath, 190 Wn.2d at 550. As a condition of her suspended sentence, Granath was prohibited from contacting the victim, her estranged husband. Granath, 190 Wn.2d at 550. The district court issued a separate no-contact order under RCW 10.99.050, reflecting its directive that Granath not contact her estranged husband. Granath, 190 Wn.2d at 550. The term of the no-contact order was five

years, i.e., three years longer than Granath's 24-month suspended sentence. Granath, 190 Wn.2d at 550.

After Granath completed her sentence in December 2014, she moved to vacate the no-contact order, arguing that it ended when she was no longer subject to the underlying no-contact condition of the sentence. Granath, 190 Wn.2d at 550. The district court denied Granath's motion, reasoning that "it 'had lawful authority to issue a separate order under [chapter] 10.99 [RCW], which is a stand-alone provision.'" Granath, 190 Wn.2d at 550 (alterations in original).

Our Supreme Court ultimately disagreed with the district court. It explained that under the plain language of the relevant statute, RCW 10.99.050, "[t]he only reason a court is permitted to issue an order of no-contact in this context is to record a condition of the sentence." Granath, 190 Wn.2d at 555 (emphasis added). The court thus concluded that the district court should have granted Granath's motion to vacate, rejecting the State's argument that RCW 10.99.050 independently authorizes a district court to issue a domestic violence no-contact order. Granath, 190 Wn.2d at 554-55, 557.

In short, Granath held that the district court erred by failing to vacate its earlier no-contact order because, under the plain language of RCW 10.99.050, a district court does not have authority to enter a domestic violence no-contact order whose term exceeds the length of the underlying sentence. Granath, 190 Wn.2d at 557. But Granath did not address whether such a no-contact order may be excluded, based on inapplicability, in a proceeding for violation of that

order. Therefore, Granath does not support Freeberg-Baskett's argument that the no-contact order entered in his case is "inapplicable" under May.

Freeberg-Baskett next argues that the trial court properly excluded the no-contact order because it was void. He contends that the order was void because, under Granath, the issuing court lacked authority to issue a no-contact order exceeding the length of Freeberg-Baskett's suspended sentence. For the reasons that follow, we are not persuaded by Freeberg-Baskett's argument.

As discussed, the collateral bar rule "prohibits a party from challenging the validity of a court order in a proceeding for violation of that order." May, 171 Wn.2d at 852. However, "[a]n exception exists for orders that are void[,]" and "the trial court's gate-keeping role includes excluding orders that are void." May, 171 Wn.2d at 852, 854.

But "a court enters a void order only when it lacks personal jurisdiction or subject matter jurisdiction over the claim." Marley v. Dep't of Labor & Indus., 125 Wn.2d 533, 541, 886 P.2d 189 (1994). And, here, Freeberg-Baskett states that he "is not challenging the subject matter or personal jurisdiction of the court." Therefore, the no-contact order was not void.

Freeberg-Baskett disagrees, relying on Mead School District No. 354 v. Mead Education Association, 85 Wn.2d 278, 534 P.2d 561 (1975), to argue that an order is void not only when the issuing court lacks jurisdiction, but also when it lacks authority to issue "the type of order." Although our Supreme Court did, in Mead, refer to a court's jurisdiction in terms of its authority to issue a particular

9

*type* of order, Mead, 85 Wn.2d at 284, it has since explained that "[t]he . . . distinction between 'jurisdiction of the subject matter' and 'the power or authority to render the particular judgment' rests on an antiquated understanding of subject matter jurisdiction." State v. Posey, 174 Wn.2d 131, 138, 272 P.3d 840 (2012). And, as discussed, it concluded in Marley that "a court enters a void order only when it lacks personal jurisdiction or subject matter jurisdiction over the claim." Marley, 125 Wn.2d at 541. Therefore, we are not persuaded by Freeberg-Baskett's argument that an order can be void even when the issuing court possesses jurisdiction.

To this end, Freeberg-Baskett argues, despite his claim that he "is not challenging the subject matter or personal jurisdiction of the court," that the issuing court lacked jurisdiction to enter a no-contact order whose term exceeded the term of his underlying sentence. He relies on Granath and on State v. Holmberg, 53 Wn. App. 609, 768 P.2d 1025 (1989), to support his argument. But because Freeberg-Baskett's argument ignores the distinction between statutory authority and subject matter jurisdiction, his reliance on these cases is misplaced.

In Holmberg, the question before the court was whether, under RCW 9.95.230, a trial court had authority to revoke probation based on a violation that occurred after the end of the probationary period but before an order terminating probation was entered. Holmberg, 53 Wn. App. at 612. And, as discussed, the issue in Granath was whether, under RCW 10.99.050, a district court has

10

authority to enter a no-contact order whose term exceeds the term of the underlying sentence. Granath, 190 Wn.2d at 551. In both cases, the reviewing court held that the trial courts were without authority under the relevant statutes. Holmberg, 53 Wn. App. at 613; Granath, 190 Wn.2d at 557. But "[a] court does not lack subject matter jurisdiction merely because it may lack authority to enter a given order." In re Pers. Restraint of Smalls, 182 Wn. App. 381, 387-88, 335 P.3d 949 (2014). Rather, "[a] court lacks subject matter jurisdiction when it attempts to decide a type of controversy that it has no authority to decide." Smalls, 182 Wn. App. at 387; see also In re Marriage of Buecking, 179 Wn.2d 438, 448, 316 P.3d 999 (2013) ("'Subject matter jurisdiction' refers to a court's ability to entertain a type of case, not to its authority to enter an order in a particular case."). Here, Freeberg-Baskett does not contend that the superior court, which entered the original no-contact order, lacked authority to decide the type of controversy before it, i.e., a nonfelony criminal case. Therefore, Freeberg-Baskett's argument fails.

Freeberg-Baskett next points to the following language from Granath to argue that the no-contact order was void: "The no-contact order issued in this case *was not enforceable after Granath completed her suspended sentence in December 2014*, and the district court should have granted her motion to vacate." Granath, 190 Wn.2d at 557 (emphasis added). But, as discussed, Granath was an appeal from a district court's denial of a motion to vacate. Granath did not hold that a no-contact order that exceeds the length of a suspended sentence is

11

void such that it can be collaterally attacked in a later proceeding—it held only that such an order is erroneous. Therefore, Freeberg-Baskett's reliance on the Granath court's language regarding enforceability is misplaced. See May, 171 Wn.2d at 852-53 (explaining that an order can be collaterally attacked based only on an argument that it is absolutely void, not based on an argument that the order is merely erroneous).

Freeberg-Baskett next suggests that allowing the State to criminalize the violation of a no-contact order that is invalid under Granath would offend due process in that defendants would not have clear notice of how the law applies to them. He again attempts to analogize this case to Holmberg, where Division Two held that a court does not have statutory authority under RCW 9.95.230 to modify or revoke probation for violations occurring outside of the probationary period. Holmberg, 53 Wn. App. at 613. But the Holmberg court's analysis rested on its interpretation of the relevant statute. Holmberg, 53 Wn. App. at 612. Unlike this case, Holmberg did not involve an alleged violation of a court order that expressly applied to the defendant and to the charged conduct. Furthermore, although the no-contact order entered in this case may have been erroneous under Granath, it gave Freeberg-Baskett clear notice of what conduct was prohibited. Freeberg-Baskett's argument is unpersuasive.

As a final matter, Freeberg-Baskett contends that "each individual defendant should not have to specifically take additional steps [to] remove an invalid order when the court has lost jurisdiction" and that "[t]o adopt such a

policy would mean that hundreds, if not thousands, of defendants . . . would have [to] move to remove invalid orders." He asserts that "[t]his is an unreasonable . . . expectation given that many [are] indigent and have no legal education to know an order terminating probation must be rendered for a court to lose its ability to impose a suspended sentence" and that "[m]ost individuals would assume an order is unenforceable when the court has lost jurisdiction."

But these contentions ignore the competing interests of the victims of the "hundreds, if not thousands" of defendant-abusers to whom Freeberg-Baskett refers. These victims rely on no-contact orders for protection from their abusers and should be able to take those orders at face value. If we were to accept Freeberg-Baskett's argument that a no-contact order that is longer than the underlying sentence automatically becomes void or inapplicable as soon as the underlying sentence expires, victims would not know that affirmative steps must be taken to obtain continuing protection even though the no-contact order already entered by the court appears to remain in effect. Indeed, in light of victims' competing interests, it is not unreasonable to expect defendants like Freeberg-Baskett to do as the defendant in Granath did, i.e., move to vacate or modify a domestic violence no-contact order entered under RCW 10.99.050 to the extent that its term outlasts the term of the underlying sentence. Therefore, Freeberg-Baskett's argument is unpersuasive.

13

No. 78963-5-I/14

We reverse and remand for further proceedings.

_____
Smith, J.

WE CONCUR:

_____        _____
                               Appelwick, C.J.

14