IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35441-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEITH ALAN KIMBALL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Keith Kimball appeals from three convictions for violating an

order of protection involving his former wife, Kara. His various challenges to the order

prohibiting contact are ineffectual. We affirm.

FACTS

The couple dissolved their marriage in 2015. A parenting plan governs custodial

arrangements for their two children. A protection order was granted to Kara dictating

that due to domestic violence, Keith was not to contact her except for written

"communications relating to parenting issues or parenting plan logistics."[1] He also was

prohibited from coming within 50 feet of Kara.

---

[1] In emergencies, he was not limited to written communication.

After accumulating three prior convictions for violating the order of protection,

Keith Kimball sent the following text messages in January and February 2017:

> I have to cancel this Saturday visit. You have succeeded in completely ruining my life. Because you insist in continuing this lie I have not been able to get a job and am completely broke. I loved you and treated you with compassion. The girls love me. You are basically holding them hostage. How can you be so ungrateful and vindictive? I'm a good, compassionate father who deserves to be able to see my daughters. (Sent Jan. 19, 2017)
> Excuse me for thinking you might have a soul. I took enough abuse from you to last a lifetime. So I'm beyond giving a shit about your bs. I never threatened you and you are denying my daughters of a beautiful, loving family and father.
> I offered you friendship and a respectful relationship because our daughters deserve it. I was wrong to call you Karl. He never hurt you the way you hurt our daughters. I care about your life and your right to be happy because [the children] love you and your well-being is important to them. Your BS fantasies are extremely destructive. But you will never destroy the bond between the girls and I. (Sent Feb. 2, 2017)
> How evil are you? [The children] just want there [sic] dad back. Fuck you and your bullshit. You are an abuser. Nothing will change that. (Sent Feb. 6, 2017)

Clerk's Papers (CP) at 52-59.

The prosecutor responded by filing three felony counts of violation of an order for

protection. The defense obtained a bill of particulars and thereafter brought a motion to

dismiss on several theories. The court denied the motion and the matter proceeded to

jury trial. After the State rested its case, the court granted defense counsel a recess to

consult with his client. Thereafter, the defense rested without presenting any witnesses.

Over the prosecutor's objection, the court did grant the defense an instruction requiring the jury to interpret the no contact order most favorably to Mr. Kimball.

The jury convicted Mr. Kimball as charged. He gave a lengthy allocution at sentencing, complaining that he was not allowed to tell the jury what a great father he was and that his counsel failed to obtain a change of venue or seek recusal of the trial judge. The court imposed a low-end sentence of 15 months in prison.

Mr. Kimball timely appealed to this court. A panel considered his appeal without hearing argument.

ANALYSIS

Mr. Kimball challenges the applicability of the protection order statute to his conduct, argues that the order violates his First Amendment rights, and claims that the order is vague. He also challenges, and the State agrees, that two of his legal financial obligations (LFOs) should be struck. We address the claims in that order before turning to the statement of additional grounds (SAG).

*Statute*

The first argument presented is a contention that the protection order statute does not apply to Mr. Kimball's case because he was not prohibited from contacting Kara Kimball. He misreads the exception as the rule.

Established principles guide review of this issue. In dealing with matters of statutory construction, the goal of an appellate court "is to discern and implement"

3

legislative intent. *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012). We

engage in de novo review. *State v. Bradshaw*, 152 Wn.2d 528, 531, 98 P.3d 1190 (2004).

A court begins its inquiry into determination of intent by looking at the plain meaning of

the statute as expressed through the words themselves. *Tesoro Ref. & Mktg. Co. v. Dep't

of Revenue*, 164 Wn.2d 310, 317, 190 P.3d 28 (2008). If the statute's meaning is plain on

its face, the court applies the plain meaning. *State v. Armendariz*, 160 Wn.2d 106, 110,

156 P.3d 201 (2007).

> RCW 26.50.110 reads, in part:
>
> Whenever [a protection order] is granted . . . . and the respondent or person
> to be restrained knows of the order, a violation of any of the following
> provisions of the order is a gross misdemeanor, except as provided in
> subsections (4) and (5) of this section:
>    (i) The restraint provisions prohibiting acts or threats of violence
> against, or stalking of, a protected party, or restraint provisions prohibiting
> contact with a protected party.

The protection order issued to Ms. Kimball states:

> Respondent is restrained from coming near and from having any contact or
> communication with petitioner, except for communications relating to
> parenting issues or parenting plan logistics. Except in emergency
> situations, such communications shall be by email, text messages or other
> written form.

CP at 49-50.

Noting that the statute only applies if the order includes "restraint provisions

prohibiting contact," Mr. Kimball alleges that since he is permitted some contact with

Kara, the order is not one "prohibiting contact." This contention, of course, would render

4

most no contact orders unenforceable if the former couple had children in common since nearly all orders of this type, as in this case, permit emergency contact or contact for limited purposes.

His argument runs counter to the meaning of the word "prohibit." It means "1. To forbid by law. 2. To prevent, preclude, or severely hinder." BLACK'S LAW DICTIONARY 1405 (10th ed. 2014). As "severely hinder" suggests, a "prohibition" need not be an all or nothing proposition.

Our court reached that same conclusion, rejecting a similar argument, in *Dejarlais*. There the court stated, "nothing in the statute prevents drafting a protection order which allows some contact, for instance, by telephone or through a third party. There is no requirement that all contact be prohibited." *State v. Dejarlais*, 136 Wn.2d 939, 945, 969 P.2d 90 (1998).

RCW 26.50.110 does not apply only to orders that prohibit all contact. Accordingly, the statute was properly applied to Mr. Kimball's behavior.

*First Amendment*

Mr. Kimball next argues that the order works as a prior restraint on his First Amendment rights by limiting his speech based on its content. Once again, he has reversed the problem by treating the permitted speech as the rule rather than the exception.

This court reviews constitutional challenges de novo. *Weden v. San Juan County*, 135 Wn.2d 678, 693, 958 P.2d 273 (1998). Prior restraints are presumptively unconstitutional unless they deal with non-protected speech. *State v. Coe*, 101 Wn.2d 364, 372-373, 679 P.2d 353 (1984). Prior restraints are "'official restrictions imposed upon speech or other forms of expression in advance of actual publication.'" *Id.* at 372 (quoting *Seattle v. Bittner*, 81 Wn.2d 747, 756, 505 P.2d 126 (1973)).

A government regulation may not rise to the level of a prior restraint where it is merely a time, place or manner restriction. *Id.* at 373. Under the federal constitution, statutes regulating time, place, or manner restriction are upheld if they are "content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Frisby v. Schultz*, 487 U.S. 474, 481, 108 S. Ct. 2495, 101 L. Ed. 2d 420 (1988). Under the state constitution, the standard is stricter: a "compelling" not "significant" government interest is required to uphold a statute regulating time, place, or manner. *Bering v. SHARE*, 106 Wn.2d 212, 234, 721 P.2d 918 (1986); *Frisby*, 487 U.S. at 481.

Our courts previously have determined that there is a compelling state interest in protecting against harassment. In *Noah*, the court examined an anti-harassment order that prohibited the defendant from coming within 300 feet of the victim's home or office, which included the lawful picketing outside of the victim's workplace. *State v. Noah*,

103 Wn. App. 29, 41-42, 9 P.3d 858 (2000).  The defendant argued that the anti-harassment order was a prior restraint on his protected speech.  The *Noah* court held:

> Protecting citizens from harassment is a compelling state interest.  The legislature authorizes the court to order that the defendant have no contact with his intended victim.  Determining no-contact distances in an antiharassment order is a case-by-case determination.  The statute is content neutral—no contact—whether profession of love, screams of hate or anything in between.  The interest to be served is the safety, security, and peace of mind of the victim.  It is narrowly tailored by focus on the victim and a no-contact zone around the victim.  It leaves open ample alternative channels of communications, by leaving open every alternative channel so long as no contact is made with the victim and the proscribed zone is not violated.  The antiharassment order authorized by the statute is an appropriate time, place, and manner restriction.

*Id.* at 41-42.  The court noted that the trial court had broad discretion under the statute to prohibit all communication attempts within the no-contact zone or otherwise devise appropriate protection for the victim.  *Id.* at 42-43.  "So long as the order contains restrictions that are valid time, place, and manner restrictions, it will be upheld."  *Id*. at 42.

Mr. Kimball relies on two cases where protection orders were found to constitute prior restraints on speech.  *In re Marriage of Suggs*, 152 Wn.2d 74, 93 P.3d 161 (2004); *In re Marriage of Meredith*, 148 Wn. App. 887, 201 P.3d 1056 (2009).  Both cases, however, are easily distinguishable because they involved orders restraining communication to third parties in addition to the protected party.  In those cases, the restraint was not narrowly tailored.  They are not this case.

Here, Mr. Kimball was found to have committed an act of domestic violence and the trial court properly exercised its discretion to prohibit him from contacting his former wife. The court then granted a narrow exception to that complete prohibition by *authorizing* a content based category of permissible communication. This was not a situation of *restricting* communication based on contents, but an instance of slightly lifting a valid total ban on contact. Although based in content, the exception is simply that. It is not a restriction on speech, but an authorization of speech.

The protection order does not violate Mr. Kimball's First Amendment rights. The court was permitted to lift the total restriction on contact in limited areas.

*Vagueness*

Mr. Kimball next challenges the "relating to parenting issues" language of the exception to the prohibition on contact, contending that it is vague. He is precluded from challenging the contents of that order in this proceeding.

To resolve a contention that a court order is vague, courts will treat the order as if it were a statute and apply standard rules of statutory construction. *State v. Bahl*, 164 Wn.2d 739, 753-754, 193 P.3d 678 (2008). The test of vagueness is whether an *ordinary person* would understand the meaning of the statute. *State v. Halstien*, 122 Wn.2d 109, 117, 857 P.2d 270 (1993). It is the burden of the challenger to establish that the statute is vague. *Id*. at 118.

8

The collateral bar rule prohibits a party from challenging the validity of a court order in a proceeding alleging a violation of the order. *Noah*, 103 Wn. App. at 46. Although a void order can be challenged, one that is merely erroneous cannot be challenged. *City of Seattle v. May*, 171 Wn.2d 847, 852-853, 256 P.3d 1161 (2011). An order is void only if there is "an absence of jurisdiction to issue the type of order, to address the subject matter, or to bind the defendant." *Mead Sch. Dist. No. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 278, 284, 534 P.2d 561 (1975).

Here, Mr. Kimball's vagueness challenge fails because the superior court had authority to issue a permanent domestic violence protection order. RCW 26.50.060(2). It has long been the rule of this state that any defects in a court order simply suggest error in issuing the order rather than lack of ability to do so. *State ex rel. Ewing v. Morris*, 120 Wash. 146, 158, 207 P. 18 (1922). Even if erroneous, the order cannot be collaterally attacked. *Id.*; *Noah*, 103 Wn. App. at 47 ("A court does not lose jurisdiction by interpreting the law erroneously.").

Our court determined that no contact orders issued pursuant to chapter 10.99 RCW could not be collaterally attacked after violation in *State v. Miller*, 156 Wn.2d 23, 31 n.4, 123 P.3d 827 (2005). It later considered that issue in the context of domestic violence protection orders. "We see no reason this should apply differently to orders issued pursuant to chapter 26.50 RCW." *May*, 171 Wn.2d at 855.

9

The collateral bar rule precludes challenges to the validity—but not the applicability—of a court order in a proceeding for violation of such an order except for challenges to the issuing court's jurisdiction to issue the type of order in question. *Id.* "An order is not applicable to the charged crime if it is not issued by a competent court, is not statutorily sufficient, is vague or inadequate on its face, or otherwise will not support a conviction of violating the order." *Miller*, 156 Wn.2d at 31. The trial court "as part of its gate-keeping function, should determine as a threshold matter whether the order alleged to be violated is applicable and will support the crime charged." *Id.* The Supreme Court then expressly noted: "We do not suggest that orders may be collaterally attacked after the alleged violations of the orders. Such challenges should go to the issuing court, not some other judge." *Id.* at 31 n.4.

Under these authorities, Mr. Kimball is collaterally barred from raising this challenge in this appeal from convictions for violating the order. *May*, 171 Wn.2d at 857. If he believes the order is invalid, he must seek modification of the order. RCW 26.50.130(1).

*Financial Arguments*

Lastly, Mr. Kimball challenges the imposition of two LFOs and seeks to avoid paying for the costs of this appeal. The State agrees that the LFOs should be stricken.

A decision released after the sentencing in this case determined that statutory changes to LFO assessment and collection applied retroactively to cases on appeal. *State*

10

*v. Ramirez,* 191 Wn.2d 732, 735, 426 P.3d 714 (2018). As a result, indigent offenders need not pay the criminal filing fee and, for prior offenders who have previously had their DNA collected, the DNA assessment may be waived. Since Mr. Kimball is indigent, and since the State agrees that he previously provided a DNA sample, we direct that the trial court strike those two assessments.

Mr. Kimball also asks that we disallow costs on appeal due to his indigency. By the terms of RAP 14.2 and our general order of February 19, 2019, we leave that issue to our commissioner in the event that the State seeks costs in this court.

*Statement of Additional Grounds*

Lastly, Mr. Kimball has filed a SAG pursuant to RAP 10.10(a). He raises claims of ineffective assistance of counsel related to his allocution statement.

The problem for Mr. Kimball is that he has no evidence in the record, apart from his statements during allocution, suggesting that his counsel erred in any of the respects he now claims. Accordingly, we decline to consider his arguments due to lack of an evidentiary basis. RAP 10.10(c). His remedy, if he believes he has a factual basis for his arguments, is to file a personal restraint petition with which he could file an affidavit describing the evidence he has available to prove his claim. *E.g.*, *State v. McFarland*, 127 Wn.2d 322, 338 n.5, 899 P.2d 1251 (1995); *State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

11

No. 35441-5-III
*State v. Kimball*

The convictions are affirmed. The case is remanded with directions to strike the two LFOs.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Siddoway, J.

12