IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the marriage of:<br><br>ALEXANDRA LEIGH CARTWRIGHT,<br><br>Respondent,<br><br>And<br><br>PATRICK RYAN FLYNN,<br><br>Appellant. | No. 84343-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Patrick Flynn appeals from an order holding him in contempt of a parenting plan. He argues that the trial court erred by finding him in contempt, impermissibly modifying the parenting plan in the absence of a modification petition, and awarding his former spouse, Alexandra Cartwright, fees incurred in obtaining an enforcement order that this court had reversed.

We hold that by adding a supervision requirement to Flynn's time with the parties' child and conditioning increases in his time on the supervisor's approval, the trial court exceeded its contempt authority and impermissibly modified the parenting plan. Therefore, we reverse these aspects of the contempt hearing order and remand to the trial court to strike them. Otherwise, we affirm.

FACTS

The underlying facts about the parties' dispute are set forth in our opinion in In re Marriage of Cartwright, No. 82231-4-I, slip op. at 2-6 (Wash. Ct. App. May

31, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/822314.pdf. We briefly summarize them again here.

In 2020, the trial court dissolved Flynn and Cartwright's marriage and entered findings and conclusions after a dissolution trial. In its findings, the court described the trial evidence of what it characterized as "troubling" actions by Flynn. But because the evidence "d[id] not show that [Cartwright] was fearful of imminent physical harm," the court could not find that Flynn's actions "rose to the level of domestic violence as define[d] by statute and caselaw." The court did find, however, that Flynn engaged in an abusive use of conflict, citing Flynn's "constant efforts to undermine [Cartwright] as an unfit parent, calling CPS[1] without justification, efforts to groom and enlist [the parties' child, W.F.,] in [Flynn's] favor over [Cartwright]," and Flynn's "overall behavior." The court thus entered a parenting plan that directed Flynn to (1) be evaluated for anger management through Anger Control Treatment & Therapies (ACT&T), and (2) "comply with any treatment as recommended by the evaluation." Under the parenting plan, W.F. would reside with Flynn every other weekend and have a weekly Wednesday evening visit with him; otherwise W.F. would reside with Cartwright.

Flynn underwent an anger management assessment with ACT&T, which issued a report in July 2020. According to the report, "Flynn's abusive use of conflict is indicative of a pattern of coercive control that goes beyond what an anger management intervention would be effective [sic]." The report stated that

---

[1] Child Protective Services.

2

Flynn "clearly meets the Behavioral Definition of domestic violence used in this assessment." ACT&T recommended that Flynn:

(1) "complete a level 2 D.S.H.S.[2] certified domestic violence intervention program that is a minimum of 39 weekly group sessions";

(2) "enroll and successfully complete DV Dads with Mark Adams LMHC when he successfully completes the weekly group phase of a DSHS certified domestic violence program," then "move to monthly monitoring sessions in his DV program where he shall remain until he successfully completes DV Dads";

(3) "comply with provider's contract"; and

(4) "abstain from all mood and mind-altering drugs without a doctor's prescription including alcohol and marijuana for the entire length of treatment."

(Boldface omitted.)

Flynn did not follow through with ACT&T's treatment recommendations, and Cartwright moved to enforce the parenting plan. The trial court granted Cartwright's motion and, in December 2020, entered an order (December 2020 Order) that directed Flynn to comply therewith. The court suspended Flynn's residential time with W.F. until he "compl[ied] with the recommended treatment of 39 weekly group sessions of a level 2 D.S.H.S. certified domestic violence intervention program." The court also awarded Cartwright $4,105.00 in fees incurred to bring her enforcement motion.

Flynn appealed, and we reversed the December 2020 Order. See Cartwright, slip op. at 2. In doing so, we addressed Flynn's argument that the trial court erred in "finding that he failed to comply with the evaluation and treatment

---

[2] Department of Social and Health Services.

requirement as set out in the parenting plan because the recommendation from ACT&T includes domestic violence and other forms of treatment." Id., at 11 n.6. Specifically, Flynn had "aver[red that] this exceeds the scope of the court's original requirement" because the parenting plan did not contemplate domestic violence treatment. Id. We disagreed, explaining that the parenting plan's language requiring compliance with " 'any treatment as recommended by the evaluation' is clear." Id.

Nevertheless, we held that the trial court erred in suspending Flynn's residential time, explaining that there are three ways that a court can change the residential provisions in a parenting plan. Id. at 7-9. First, "a court may change an existing residential schedule contained in a parenting plan . . . by including self-executing language in th[e] original [parenting plan]." Id. at 7. Second, a court may change a parent's residential time pursuant to a petition to modify under RCW 26.09.260 and .270, if there is adequate cause to alter the existing plan. Id. at 8-9. And finally, "a court may adjust a parent's residential time in a parenting plan based on contempt proceedings." Id. at 9. We held that because the parenting plan did not contain a self-executing provision reducing Flynn's residential time in the event of noncompliance, "[t]he trial court should have upheld the procedural requirements for either contempt proceedings or a modification of the parenting plan" before suspending Flynn's time. Id. at 14. And because Cartwright did not petition for modification and the trial court did not follow the statutory procedure for contempt proceedings, the trial court erred by suspending Flynn's residential time. Id.

After we reversed the December 2020 Order, Cartwright sought an order holding Flynn in contempt of the parenting plan and requested that Flynn's time with W.F. remain suspended until he complied with ACT&T's treatment recommendations. Cartwright did not petition to modify the parenting plan.

In her contempt motion, Cartwright pointed out that Flynn had not seen W.F. since January 2021. She asserted that a resumption of residential time would thus "be a major adjustment" for W.F., and that it was "important to facilitate their reunification in a way that feels safe and secure" for W.F. Cartwright stated, "I believe professionally-supervised visitation and gradually increased visitation, in conjunction with [Flynn's] compliance with the treatment recommendations, will assist in ensuring [W.F.] is emotionally and practically supported through this transition." Cartwright asked the court to order a phased-in residential schedule under which Flynn's time with W.F. would remain suspended until he completed four weekly group treatment sessions, and would thereafter be limited to professionally supervised visitation, which would increase incrementally and become unsupervised only if Flynn remained in compliance with treatment recommendations and "provided the professional supervisor deems it appropriate." Finally, Cartwright requested that the trial court "affirm" the attorney fee award in the December 2020 Order and asked for an additional award of fees for bringing her contempt motion.

Flynn opposed Cartwright's motion, focusing his arguments on the propriety of the treatment ACT&T recommended. He confirmed he did not complete the treatment.

5

On July 15, 2022, the trial court held a hearing on Cartwright's motion. The court found Flynn "in contempt under RCW 26.09.160 as well as RCW 7.21.010, the civil contempt statute," stating, "I want everyone to be perfectly clear that I am indeed finding Mr. Flynn in contempt for failing to comply with this Court's orders which was very clear that he must comply with any treatment as recommended by the evaluation." It determined that the remedies requested by Cartwright were reasonable "remedial measures," and it entered a contempt hearing order adopting the phased-in residential schedule Cartwright had proposed. The trial court also "affirm[ed] the attorney fee award of $4,105.00 . . . included in the [December 2020 Order]" in addition to awarding Cartwright fees for bringing her contempt motion.

Flynn appeals.

ANALYSIS

I.      Contempt Finding

Flynn argues that the trial court erred by finding him in contempt. We disagree.

We review a trial court's decision in a contempt proceeding for an abuse of discretion. In re Marriage of DeVogel, 22 Wn. App. 2d 39, 53, 509 P.3d 832 (2022). We review a trial court's factual findings for substantial evidence. Id.; In re Marriage of Lesinski, 21 Wn. App. 2d 501, 514-15, 506 P.3d 1277 (2022). " 'Substantial evidence exists if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.' " Lesinski, 21 Wn. App. 2d at 514 (internal quotation marks omitted)

(quoting In re Marriage of Fahey, 164 Wn. App. 42, 55, 262 P.3d 128 (2011)). We strictly construe the parenting plan to determine whether the alleged conduct constitutes " 'a plain violation' " of the plan. In re Marriage of Eklund, 143 Wn. App. 207, 213, 177 P.3d 189 (2008) (quoting In re Marriage of Humphreys, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995)).

Here, the trial court found Flynn in contempt under both RCW 26.09.160 and RCW 7.21.010. Under the former statute, "[a]n attempt by a parent . . . to refuse to perform the duties provided in the parenting plan . . . shall be deemed bad faith and shall be punished by the court by holding the party in contempt of court." RCW 26.09.160(1); see also In re Marriage of Myers, 123 Wn. App. 889, 893, 99 P.3d 398 (2004) ("A parent who refuses to perform the duties imposed by a parenting plan is per se acting in bad faith."). Under the general contempt statute, contempt includes, as relevant here, "intentional . . . [d]isobedience of any lawful judgment, decree, order, or process of the court." RCW 7.21.010(1)(b).

Substantial evidence supports the trial court's finding that Flynn was in contempt under both statutes. The parenting plan—an order of the court—directed Flynn to comply with "any treatment" recommended by the anger management evaluation. On appeal, Flynn persists in arguing that because the trial court did not find that he engaged in domestic violence when it entered the parenting plan, the parenting plan "must be interpreted to mean that Mr. Flynn is obligated to undergo an *anger management* evaluation (and no other kind), and that he is obligated to comply with treatment for *anger management* (and nothing

7

else).” But as we explained in the previous appeal, the parenting plan's language is clear: Flynn was required to undergo an anger management evaluation and comply with "*any* treatment" recommended thereby. See Cartwright, slip op. at 11 n.6 (emphasis added). We adhere to our prior interpretation of the parenting plan as the law of the case and need not revisit the issue. See Cronin v. Cent. Valley Sch. Dist., 12 Wn. App. 2d 99, 111, 456 P.3d 843 (2020) (under law of the case doctrine, questions determined on appeal generally will not again be considered in a subsequent appeal absent a substantial change in the evidence); cf. RAP 2.5(c)(2) (giving this court discretion to "review the propriety of an earlier decision . . . in the same case").

Flynn also reasserts on appeal that he "complied with his obligations under the Parenting Plan because he underwent the anger management evaluation, and ACT&T concluded that he did not have an anger management issue [and] made no recommendations for anger management treatment." (Emphasis omitted.) But in his declaration submitted in response to the contempt motion, Flynn himself confirmed that ACT&T's "treatment plan included entering and . . . complet[ing] a Level 2 D.S.H.S. Certified Domestic Violence intervention program that included a minimum of 39 weekly group sessions" and that he did not complete that treatment. Flynn's own declaration constitutes substantial evidence supporting the trial court's contempt finding.

In support of reversal, Flynn argues that the trial court's contempt finding either failed to explicitly identify the part of the parenting plan that was violated or relied on a violation of the December 2020 Order. He points out that the

contempt hearing order states that he failed to comply not only with the parenting plan, but also with the December 2020 Order, which had since been reversed. But it is plain from the record that the trial court's contempt finding was based on Flynn's failure to comply with the parenting plan's directive that he complete any treatment recommended by the ACT&T evaluation. This directive was clearly spelled out in the parenting plan, and the December 2020 Order merely reiterated it. Therefore, while the references to the December 2020 Order were erroneous, substantial evidence supports the trial court's contempt finding.

Flynn next argues that the trial court erred by disregarding evidence that to enroll for the recommended treatment, he was required to "confess in writing to having engaged in domestic violence," which justified his refusal to participate in treatment. In support of this assertion, he cites to a declaration filed in support of a March 2021 motion to vacate the December 2020 Order, to which he attached the enrollment paperwork.

But not only is it unclear where in the paperwork Flynn was required to "confess in writing" to engaging in domestic violence, Flynn's March 2021 declaration and the paperwork attached thereto were not before the trial court in connection with Cartwright's contempt motion. And even if they were, this court will not, on a substantial evidence review, second guess the trial court's decision as to what weight to give that evidence. See Burnside v. Simpson Paper Co., 66 Wn. App. 510, 526, 832 P.2d 537 (1992) ("Where there is conflicting evidence, it is not the role of the appellate court to weigh and evaluate the evidence.").

Finally, Flynn asserts that to the extent the parenting plan requires him to

9

participate in domestic violence-related treatment based on ACT&T's evaluation, it violates Washington law and deprives him of due process for various reasons. He argues that the parenting plan could not direct him to undergo domestic violence treatment absent a finding of domestic violence and that it improperly authorized ACT&T to make recommendations related to substance use absent a finding that Flynn had a substance abuse problem. Further, he claims this requirement deprived him of notice, an opportunity to be heard, and an ability to confront or cross-examine with regard to ACT&T's recommendations and that it improperly delegated the court's adjudicative powers to ACT&T.

Fatal to Flynn's due process arguments is the fact that each argument is, at bottom, a challenge to the parenting plan's directive that Flynn comply with "any" treatment recommended by the anger management assessment. Flynn claims that the parenting plan deprived him of an opportunity for judicial review of ACT&T's recommendations, but he is incorrect: The parenting plan includes a dispute resolution provision that provides for mediation—then court review—of "disagreements about this parenting plan." Also, as Cartwright points out,[3] Flynn cannot challenge the merits of the underlying order in an appeal from a contempt

---

[3] Cartwright asserts that "[a]ll of [Flynn]'s substantive arguments were either waived, presented and rejected, or could have been presented, before." But she provides no further specificity or analysis except with regard to Flynn's argument that domestic violence treatment was beyond the scope of the parenting plan. Accordingly, we decline to deem "all" of Flynn's arguments waived or previously rejected.

Cartwright also states that she has decided "not to fully brief the multitude of issues raised" in Flynn's opening brief, and she directs this court to her briefing in Flynn's prior appeal. But under RAP 10.3(b), a respondent's brief should conform to the requirements for an appellant's brief "and answer the brief of appellant." We do not consider Cartwright's brief from the prior appeal. Cf. Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) (deeming abandoned the issues a party attempted "to incorporate . . . by reference to trial briefs or otherwise").

order. Griffin v. Draper, 32 Wn. App. 611, 614, 649 P.2d 123 (1982); see also City of Seattle v. May, 171 Wn.2d 847, 852, 256 P.3d 1161 (2011) ("The collateral bar rule prohibits a party from challenging the validity of a court order in a proceeding for violation of that order.").[4]

Substantial evidence supports the trial court's finding that Flynn failed to obey the parenting plan. Thus, we conclude the trial court did not err in ruling that Flynn was in contempt.

II.     Contempt Sanctions

Next, Flynn argues that the trial court erred by imposing sanctions that exceeded its authority in this contempt proceeding and constituted impermissible modifications to the parenting plan. Specifically, Flynn takes issue with three aspects of the trial court's order: (1) the initial suspension and subsequent phasing-in of Flynn's time with W.F., (2) the addition of a supervision requirement, and (3) the directive that Flynn comply with ACT&T's treatment recommendations. We hold that the suspension and phasing-in of Flynn's time were appropriate remedial sanctions under the circumstances and that the trial court did not err to the extent it directed Flynn to comply with ACT&T's recommendations. However, we agree with Flynn that it was error to add supervisory limitations on his time with W.F. that were absent from the original parenting plan.

---

[4] Although an exception to this rule exists for orders that are void, May, 171 Wn.2d at 852, an order is void only if the court that entered it lacked personal jurisdiction or jurisdiction to adjudicate the type of controversy at issue. Marley v. Dep't of Labor & Indus., 125 Wn.2d 533, 541-42, 886 P.2d 189 (1994). And Flynn does not argue—much less establish—that the trial court was without jurisdiction when it entered the parenting plan.

A.      Standard of Review and Legal Standards

"Punishment for contempt of court is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." In re Marriage of Mathews, 70 Wn. App. 116, 126, 853 P.2d 462 (1993). "Discretion is abused where it is exercised on untenable grounds or for untenable reasons." Newlon v. Alexander, 167 Wn. App. 195, 199, 272 P.3d 903 (2012). "A court necessarily abuses its discretion if its decision is based on an erroneous view of the law." In re Marriage of Scanlon, 109 Wn. App. 167, 174-75, 34 P.3d 877 (2001). "A court's authority to impose sanctions for contempt is a question of law, which we review de novo." In re Dependency of A.K., 162 Wn.2d 632, 644, 174 P.3d 11 (2007).

Here, as discussed, the trial court found Flynn in contempt under both RCW 26.09.160, the contempt statute for parenting plan violations, as well as RCW 7.21.010, the general contempt statute. While RCW 26.09.160(2)(b) identifies specific sanctions for bad faith lack of compliance with "an order establishing residential provisions for a child," the sanctions Flynn challenges are not among those specified therein. Accordingly, we turn to the general contempt statute for the relevant standard for sanctions. Under that statute,

> If the court finds that [a] person has failed or refused to perform an act that is yet within the person's power to perform, the court may . . . impose one or more of the following remedial sanctions:
> (a) Imprisonment if the contempt of court is of a type defined in RCW 7.21.010(1)(b) through (d). The imprisonment may extend only so long as it serves a coercive purpose.
> (b) A forfeiture not to exceed two thousand dollars for each day the contempt of court continues.
> (c) An order designed to ensure compliance with a prior order of the court.

12

(d) Any other remedial sanction other than the sanctions specified in (a) through (c) of this subsection *if the court expressly finds that those sanctions would be ineffectual to terminate a continuing contempt of court.*

RCW 7.21.030(2) (emphasis added).[5]

For a sanction to be remedial rather than punitive, it must contain a purge clause that is "designed to serve remedial aims"—i.e., "it must be directed at obtaining future compliance." In re Interests of M.B., 101 Wn. App. 425, 450, 3 P.3d 780 (2000). The purge condition must also "be within the power of the [contemnor] to fulfill" and "reasonably related to the cause or nature of the . . . contempt." Id.

Here, as the trial court did not make a finding under RCW 7.21.030(2)(d) that the sanctions described in RCW 7.21.030(2)(a) through (c) "would be ineffectual to terminate a continuing contempt of court," RCW 7.21.030(2)(c) provides the authority for the sanction. Thus, the court's authority was limited to "[a]n order designed to ensure compliance with a prior order of the court." RCW 7.21.030(2)(c). Imposing a sanction beyond this authorization would be an abuse of discretion.

It is also an abuse of discretion, in the context of a family law proceeding, if the trial court imposes a contempt sanction that rises to the level of a parenting plan modification without following the statutory procedures for modification. See In re Custody of Halls, 126 Wn. App. 599, 608, 109 P.3d 15 (2005) (trial court

---

[5] The court may also impose punitive sanctions under the general contempt statute, but only pursuant to the procedures set forth in RCW 7.21.040, which requires commencement of an action "by a complaint or information filed by the prosecuting attorney . . . charging a person with contempt of court and reciting the punitive sanction sought to be imposed." RCW 7.21.040(2)(a). No such action was commenced here, so this section is inapplicable.

lacked authority to modify parenting plan where the only motion before it was a contempt motion that gave no notice that a modification was sought, and court had not made findings to support modification). A modification "occurs when a party's rights are either extended beyond or reduced from those originally intended in the decree." In re Marriage of Christel, 101 Wn. App. 13, 22, 1 P.3d 600 (2000). As we explained in Flynn's prior appeal, the " '[t]he procedure for modification is very specific and requires consideration of certain criteria such that the court's discretion is limited.' " Cartwright, slip op. at 9 (citing RCW 26.09.260-.270). Among other things, a court generally cannot modify a parenting plan

> unless it finds, upon the basis of facts that have arisen since the prior . . . plan or that were unknown to the court at the time of the prior . . . plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

RCW 26.09.260(1). Compliance with the statutory procedures for modification is mandatory. In re Marriage of Shryock, 76 Wn. App. 848, 852, 888 P.2d 750 (1995). That said, a temporary suspension of a parent's residential time, lasting only so long as the parent does not follow a parenting plan's conditions, is not a modification. See Kirshenbaum v. Kirshenbaum, 84 Wn. App. 798, 807, 929 P.2d 1204 (1997) (parenting plan authorized arbitrator to suspend visitation rights without court order).

We address Flynn's challenges to the contempt hearing order with the foregoing principles in mind.

B.      Changes to Residential Time

Flynn points out that under the trial court's order, his time with W.F. will remain suspended until he has completed a minimum of four weekly group treatment sessions, and then will gradually increase over time. He argues that because these changes to his residential time will remain in effect even after he begins complying with the recommended treatment, they go beyond what the trial court was authorized to impose as a remedial sanction. We disagree.

The changes to Flynn's time were designed to be temporary and were expressly intended as remedial measures to coerce Flynn's full compliance with the parenting plan. ACT&T recommended—and thus the parenting plan required—that Flynn complete a DSHS-certified domestic violence intervention program that was "a minimum of 39 weekly group sessions," followed by the "DV Dads" program. Given that Flynn's full compliance with the parenting plan's treatment requirement will take time—the better part of a year, at a minimum— suspending Flynn's time with W.F. until he has completed four sessions and conditioning additional increases in his time on continued compliance with the months-long treatment are sanctions designed to coerce compliance. Cf. M.B., 101 Wn. App. at 440 (coercive sanction is justified "on the theory that it will induce a specific act that the court has the right to coerce"). Furthermore, the contempt order provides that Flynn's contempt "will be purged" upon "successful completion of all treatment recommended by ACT&T, and compliance with the program requirements." That is, Flynn has the power to purge his contempt by

fully complying with treatment.[6]

The suspension of his residential time also did not constitute an impermissible modification to the parenting plan, as Flynn claims. Flynn relies on Wulfsberg v. MacDonald, 42 Wn. App. 627, 713 P.2d 132 (1986), for the proposition that "withholding of visitation because a parent is in contempt for failure to obey provisions of the dissolution decree is an abuse of discretion." But in Wulfsberg, the court suspended the contemnor parent's visitation rights indefinitely. Id. at 631. Here, by contrast, the suspension was temporary. Furthermore, even the Wulfsberg court recognized that withholding visitation as a contempt sanction could be a proper exercise of discretion based on the welfare of the child, but there, the trial court "gave no reasons" for indefinitely suspending the contemnor's visitation rights. Id. at 632; cf. Lunsford v. Waldrip, 6 Wn. App. 426, 429, 493 P.2d 789 (1972) (declining to decide that contemnor parent "has such an inherent right to visitation that the trial court cannot consider his conduct in defining or withholding visitation privileges" in sanctioning for contempt and observing that "[t]he paramount concern in such matters is the welfare of the child, and the conduct of the father as it affects the child's welfare is a proper consideration for the trial court"). Here, by contrast, the trial court expressly indicated it was concerned that Flynn's "obstinance and refusal to confront reality

---

[6] Flynn's reliance on In re Marriage of Didier, 134 Wn. App. 490, 140 P.3d 607 (2006), and In re Marriage of Farr, 87 Wn. App. 177, 940 P.2d 679 (1997), is also misplaced. Didier and Farr each concerned the adequacy of a purge condition for a parent who was sanctioned with incarceration. See Didier, 134 Wn. App. at 505 (incarceration was punitive and not coercive where parent could not immediately obtain release "solely by paying the money owed"); Farr, 87 Wn. App. at 187 (incarceration was punitive and not coercive where parent could not avoid jailtime "by agreeing to comply with the parenting plan"). Here, no jailtime was ordered, and for the reasons already discussed, the sanction is coercive, not punitive.

[was] not really in [W.F.]'s best interest." The contempt sanctions of suspending and phasing-in Flynn's time were not impermissible modifications to the parenting plan. Cf. Christel, 101 Wn. App. at 23 (change to dispute resolution provisions of a parenting plan amounted to a modification where "the language is clearly intended to apply into the future" and had "all of the characteristics of a permanent change rather than a temporary order").

C.     Supervision Requirement

Flynn next argues that the trial court exceeded its contempt authority and impermissibly modified the parenting plan by adding a supervision requirement to his time with W.F. and conditioning increases in that time on the supervisor's approval. We agree.

Although the trial court apparently believed that the supervision requirement was an appropriate condition for Flynn to purge his contempt, it was not. As discussed, a purge condition must, among other things, "be directed at obtaining future compliance" and "within the power of the [contemnor] to fulfill." M.B., 101 Wn. App. at 450. But the trial court agreed to impose the supervision requirement not to coerce compliance, but because Cartwright proposed it to protect W.F. Furthermore, the supervision requirement is unaffected by Flynn's future compliance with treatment because Flynn's time will become unsupervised only if the supervisor "deems it appropriate." Even more problematically, the supervisor must also "deem[ ] it appropriate" for Flynn's time with W.F. to increase, and the supervisor's determination in this regard is not subject to judicial review. That is, the supervision requirement could render permanent the

17

otherwise temporary phasing-in of Flynn's time, thus converting a permissible remedial sanction into an impermissible modification to the parenting plan. Cf. Kirshenbaum, 84 Wn. App. at 807 (court may delegate authority to suspend visitation if delegee's decision is subject to court review).

Also, when it entered the parenting plan in 2020, the trial court did not require that Flynn's time with W.F. be supervised despite finding that Flynn engaged in an abusive use of conflict. In other words, the court made no determination at that time that the best interests of the child necessitated supervision of Flynn's time with W.F. Cf. RCW 26.09.191(2)(m)(i) (limitations, such as supervision, are intended to protect the child from abuse that could result if the child has contact with the parent requesting residential time). Later, in her contempt motion, Cartwright argued that supervision was in W.F.'s best interests because of the time that had passed since W.F. had seen Flynn.[7] But unlike the temporary suspension and phasing in of Flynn's time with W.F. to coerce his compliance with treatment, adding a *new limitation* on Flynn's time constituted a permanent alteration to the parenting plan. Making such an alteration based on changed circumstances allegedly affecting the best interests of the child was the proper subject of a modification proceeding, not a mere contempt proceeding. See In re Marriage of Coy, 160 Wn. App. 797, 804, 248 P.3d 1101 (2011) ("Any modification, no matter how slight, requires an independent inquiry by the trial court."); see also RCW 26.09.260(1); Halls, 126 Wn. App. at 607 ("[A]bsent a

_____

[7] Flynn acknowledged at the contempt hearing that given the long period of no visitation with W.F., "it would be in the best interest of the child to have it be in a safe, controlled manner," but suggested reunification therapy rather than professionally supervised visits.

finding that modification is in the best interests of a child, the court may not modify for mere violations of the parenting plan."). Yet there was no modification petition before the trial court, and the court did not make any findings to justify a modification.

For the foregoing reasons, we hold that the trial court erred in sanctioning Flynn by adding a supervision requirement to his time with W.F. and conditioning increases in his time on the supervisor's approval.

### D.     Treatment Requirements

Finally, Flynn argues that the trial court erred when it entered "limitations" related to domestic violence and substance abuse. This appears to be a challenge to the trial court's contempt hearing order to the extent that it directs Flynn to comply with ACT&T's treatment recommendations, including its recommendation that Flynn refrain from using certain substances during the course of that treatment. Flynn argues that these directives, too, constituted impermissible modifications of the parenting plan.

Flynn's argument is without merit. As discussed above, as well as in the prior appeal, the parenting plan itself is the source of this requirement, and the plan is clear: Flynn must comply with *any* treatment recommended by the anger management evaluation. The domestic violence treatment and Flynn's refraining from using certain substances during the course of that treatment are both part of ACT&T's treatment recommendations. Accordingly, they were required under the parenting plan and do not, as Flynn contends, constitute modifications thereto.

III.     Re-award of Attorney Fees

Flynn argues that the trial court erred by re-awarding the fees it awarded to Cartwright under the December 2020 Order. He argues that although Cartwright asserted that fees were warranted based on Flynn's intransigence, "Cartwright never alleged intransigence related to the [December 2020 Order], no evidence was ever submitted, [and] no authority was ever provided." He also argues that there was no basis under Washington law to grant Cartwright's request for fees " 'for having to bring this motion' " and that Cartwright should not have been awarded fees for bringing a motion that, according to Flynn, "made no effort to comply with the law."

But these arguments are being raised for the first time on appeal. Cartwright plainly requested in her contempt motion that the fees awarded under the December 2020 Order be re-awarded based on Flynn's intransigence. Flynn did not oppose that request in his response, and while Flynn's attorney acknowledged the request at the contempt hearing, he provided no argument with regard to why it should not be granted. Flynn points to nothing in the record to show that his opposition to Cartwright's request was raised with enough specificity to alert the trial court to the errors Flynn now asserts on appeal. We therefore decline to review the trial court's decision to re-award the fees awarded in the December 2020 Order. See RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court."); see also Smith v. Shannon, 100 Wn.2d 26, 37, 666 P.2d 351 (1983) (reason for requiring issue preservation is "to afford the trial court an opportunity to correct any error,

20

thereby avoiding unnecessary appeals and retrials").

IV.    Fees on Appeal

Both Flynn and Cartwright request an award of fees on appeal. Flynn argues that a fee award is warranted based on Cartwright's intransigence. Cartwright relies on RCW 26.09.160(1), which directs the court to punish a bad faith contemnor "by awarding to the aggrieved party reasonable attorneys' fees and costs incidental in bringing a motion for contempt of court." She also relies on RCW 26.09.140, which gives this court the discretion to award fees on appeal in dissolution proceedings.

Even though the trial court committed error in fashioning a remedy for Flynn's contempt, we are not persuaded that Cartwright was intransigent by bringing her contempt motion or by raising the arguments she raised to support her motion. Cf. Schumacher v. Watson, 100 Wn. App. 208, 216, 997 P.2d 399 (2000) ("Intransigence is the quality or state of being uncompromising." (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1186 (3d ed. 1993))). Meanwhile, although Cartwright asserts that "[b]oth RCW 26.09.160(1) and RCW 26.09.140 provide a basis for fees," she provides no further analysis as to why an award of fees on appeal is warranted under either statute. Cf. Brownfield v. City of Yakima, 178 Wn. App. 850, 876, 316 P.3d 520 (2014) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."). Accordingly, we deny each party's request for an award of fees on appeal.

We reverse the trial court's contempt hearing order to the extent that it

adds a supervision requirement to Flynn's time with W.F. and makes increases in Flynn's time subject to the supervisor's approval. We remand to the trial court to strike these provisions from the order. Otherwise, we affirm.

_Chung, J._

WE CONCUR:

_Coburn, J._        _Hazelrigg, ACJ_